899 So.2d 535 (2005)
Marilyn LANDIAK
v.
Cedric L. RICHMOND, Fox McKeithen, Secretary of State of Louisiana, and Kimberly Williamson Butler, Clerk of Criminal Court of Orleans Parish.
No. 2005-C-0758.
Supreme Court of Louisiana.
March 24, 2005.
Opinion Issued March 30, 2005.
*537 Silvestri & Massicot, Anthony L. Marinaro, Frank A. Silvestri, New Orleans, for Applicant.
*538 Spears & Spears, Ike Spears, New Orleans, De Voyce Stubbs Gray, Wright, Moore & Associates, Dennis W. Moore, Eric A. Wright, New Orleans, Stephen D. Hawkland, Baton Rouge, Marietta S. Norton, Sherry S. Landry, New Orleans, for Respondent.

DECREE
For the reasons to be recited in an opinion to follow, judgment is rendered in favor of plaintiff and against defendants on plaintiff's petition objecting to candidacy, declaring Cedric Richmond ineligible as a candidate for the office of Councilmember District "D" for the City of New Orleans, and he is accordingly disqualified.[1] It is hereby directed that the Secretary of State of the State of Louisiana be served with a certified copy of the final judgment in this case pursuant to La.Rev.Stat. 18:1410. The Secretary of State is ordered to void those votes for Cedric Richmond that may have been cast in the on-going absentee voting or that might be cast in the election of April 2, 2005, should the Secretary of State be unable to restructure the ballot and/or voting machines before that time. Id.
COURT OF APPEAL JUDGMENT REVERSED;
JUDGMENT RENDERED.
JOHNSON, J., recused.
CALOGERO, Chief Justice.[*]
In the cases heretofore decided by this court on candidate qualification, we have assiduously respected the principle that the law favors candidacy and must be liberally construed so as to promote rather than defeat candidacy. Yet, the law as applicable here clearly requires that a candidate be domiciled in the district in which he seeks election for two (2) years immediately preceding the election. No previous case in this Court has quite measured up to this one in the abundance of credible evidence and supportable facts showing that the challenged candidate for public office does not comply with the legally-required domicile component. Although doubt must be resolved in favor of allowing the candidate to run, the documentary and objective evidence in this case leaves no doubt that the candidate is not qualified for the office he seeks.
It is not enough to say, "I want to be a candidate for a given public office. I know I must be domiciled in the district applicable to the seat I seek for two years prior to the election. I therefore swear that I have been domiciled at a given residence within the district for two full years preceding the scheduled election for that office. Therefore, I am qualified for the office. End of inquiry." No, the candidate may have an additional burden, for once a qualified elector challenges that person's qualifications by producing sufficient evidence to support a contrary conclusion regarding the candidate's domicile, the burden shifts to the candidate to prove otherwise.
In this case, the record contains evidence consisting of four sworn, notarized notice of candidacy forms, three voter registration cards, eight homestead exemption claims, three motor vehicle registration documents, three telephone directory entries, three candidate's reports, a conveyance record, and a police report, all indicating that the candidate's domicile was a residence outside the New Orleans City Council district he seeks to represent well *539 into the two-year period immediately preceding the election. This evidence is contradicted by only the testimony of the candidate and his immediate family, and the further circumstance that he was originally domiciled at his mother's address from birth until 1996 or 1997. However, under the appropriate standard of review, the record evidence in this case convinces this court that the factual findings of the district court were manifestly erroneous.
The salient issue presented by this election case is whether the defendant, Cedric Richmond, a candidate for New Orleans City Council District D, is qualified to run for that office because he has been domiciled in (and is not simply a resident of) District D for "at least two years immediately preceding" the April 2, 2005, special election to fill that position, as expressly required by Home Rule Charter, City of New Orleans, § 3-104.
We granted the writ application filed by plaintiff, Marilyn Landiak, in this election challenge to review the judgment of the court of appeal affirming a district court judgment in favor of the candidate. Following our review of all of the record evidence presented at the trial in this case, we find manifest error in the district court's finding that the candidate was domiciled at 8701 Lomond Road, located within New Orleans City Council District D, for "at least two years immediately preceding" the April 2, 2005, special election. For the reasons more fully explained below, we reverse the judgment of the court of appeal affirming the district court judgment, and enter judgment in favor of the plaintiff on her petition objecting to candidacy. We declare that Mr. Richmond is ineligible as a candidate for the office of New Orleans City Councilmember District D. He is therefore disqualified as a candidate for that position in the April 2, 2005, election.

FACTS AND PROCEDURAL HISTORY
On February 11, 2005, Mr. Richmond filed a form, "State of Louisiana, Notice of Candidacy," declaring his intent to run in the April 2, 2005, election for the office of New Orleans City Councilmember District D. On the form, "8701 Lomond Road, New Orleans, LA 70127" was listed as Mr. Richmond's "domicile address." The "Notice of Candidacy" form, which must be executed under oath before a notary and two witnesses who are registered to vote on the office the candidate seeks, requires that candidates certify under oath to ten statements, including the following: "I meet the qualifications of the office for which I am qualifying; I have read this Notice of Candidacy, and all of the statements contained in it are true and correct."
On February 28, 2005, the plaintiff filed a "Verified Petition Objecting to the Candidacy of Cedric Richmond for Council Member District `D' Pursuant to R.S. 18:1401, et seq." In her petition, the plaintiff sought "judicial determination that Mr. Richmond is not qualified to run for the City Councilman District D seat on April 2, 2005[,] because he has not been domiciled in District D for the requisite two years prior to the scheduled date of this election." The plaintiff's petition set forth her position "on information and belief" that Mr. Richmond's true domicile during most of the two-year period immediately preceding the April 2, 2005, scheduled election was a residence he co-owned with his brother, Sidney Richmond, located at 4809 Eastview Drive in New Orleans, which is outside of Council District D. The plaintiff's petition listed numerous pieces of documentary evidence supporting her claims.[1]
*540 Trial on the merits was conducted by the district court on March 10, 2005. On March 11, the district court rendered judgment in favor of Mr. Richmond, denying the plaintiff's request to disqualify his candidacy, as well as her request for injunctive and declaratory relief. In written findings of fact, the district court focused on the testimony of Mr. Richmond and his witnesses relative to the candidate's relationship with his family home located at 8701 Lomond Road, within New Orleans City Council District D. The district court's findings of fact conclude with its statement that the candidate's uncontroverted testimony that he "has always intended 8701 Lomond Road to be his domicile" "must be accepted as true and therefore plaintiff has failed to meet [her] burden of proof in this case." Following review of the relevant case law, the district court found that the candidate had "shown through a series of witnesses and through his own testimony that his clear intent was to maintain a domicile at 8701 Lomond Road." Finally, the district court noted that its decision was based on the testimony of all of the witnesses and all of the documentary evidence presented at trial. The plaintiff appealed.
On March 17, 2005, a divided five-judge panel of the court of appeal affirmed the district court's judgment. The "Facts" section of the opinion issued by the three-judge majority sets forth seven items of uncontested fact, then summarized the testimony of the candidate and his witnesses, including the fact that "Mr. Richmond testified that it was always his intent for the Lomond Road address to be his domicile." The court of appeal then applied the relevant case law, including Dixon v. Hughes, 587 So.2d 679 (La.1991), and Cade v. Lombard, 99-0184 (La.App. 4 Cir. 1/23/99), 727 So.2d 1221, to find no error in the district court judgment.
Judge Roland Belsome dissented, finding, on the basis of the record evidence, "that Mr. Richmond expressly declared 4809 Eastview Drive as his domicile by filing numerous public records indicating such dating back to 1997." He discussed many of the public documents in the record. According to Judge Belsome, "[f]rom 1997 until December 2004, all the surrounding circumstances support 4809 Eastview Drive as [the candidate's] domicile." Judge Belsome distinguished the facts of this case from the facts in Dixon, 587 So.2d 689, Cade, 99-0184, 727 So.2d 1221, and Becker v. Dean, 03-2493 (La.9/18/03), 854 So.2d 864. He concluded that the district court was clearly wrong in its factual findings, then stated his belief that the district court judgment should be reversed and the candidate should be disqualified. Judge Michael Kirby also dissented from the decision of the court of appeal majority for the reasons assigned by Judge Belsome. The plaintiff sought writs in this court.
We granted writs and heard oral argument on March 23, 2005. Landiak v. Richmond, 05-0758 (La.3/23/05), 897 So.2d 586. On March 24, 2005, this court issued a decree rendering judgment in favor of the plaintiff and against the candidate and the public officials charged with preparing the ballot and voting machines. Landiak v. *541 Richmond, 05-0758 (La.3/24/05), 899 So.2d 535. This court thereupon declared Mr. Richmond ineligible as a candidate for the office of New Orleans City Councilmember District D, and disqualified him from the campaign, with promise of an opinion to follow. Id. This opinion is now being issued to explain the reasons for our decree.

RELEVANT LEGAL PRINCIPLES
The manner of qualifying for election to public office in Louisiana is set forth in La.Rev.Stat. 18:461(A)(1), which provides, in pertinent part, that "[a] person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing notice of his candidacy." The information that must be included in a notice of candidacy is detailed as follows in La.Rev.Stat. 18:463(A)(1)(a): "A notice of candidacy shall be in writing and shall state the candidate's name, the office he seeks, the address of his domicile, the parish, ward, and precinct where he is registered to vote, and the political party, if any, with which he is registered as being affiliated." (Emphasis added.) Objections to candidacy are governed by La.Rev.Stat. 18:1401(A), which provides that "[a] qualified elector[2] may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote." "Grounds for an objection to candidacy" include the following: "The defendant does not meet the qualifications for the office he seeks in the primary election." La.Rev.Stat. 18:492(A)(3).
Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. See Becker v. Dean, 03-2493, p. 7 (La.9/18/03), 854 So.2d 864, 869; Russell v. Goldsby, 00-2595, p. 4 (La.9/22/00), 780 So.2d 1048, 1051; Dixon v. Hughes, 587 So.2d 679, 680 (La.1991); Messer v. London, 438 So.2d 546 (La.1983). It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy. Becker, 03-2493 at 7, 854 So.2d at 869; Pattan v. Fields, 95-2375 (La.9/28/95), 661 So.2d 1320. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections "so as to promote rather than defeat candidacy." Becker, 03-2493 at 7, 854 So.2d at 869; Russell, 00-2595 at 4, 780 So.2d at 1051; Dixon, 587 So.2d at 680. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. Becker, 03-2493 at 7, 854 So.2d at 869; Russell, 00-2595 at 4, 780 So.2d at 1051; Dixon, 587 So.2d at 680.
La.Rev.Stat. 18:451, relative to "qualifications of candidates," specifically requires that when "the qualifications for an office include a residency or domicile requirement [in this case, it is a domicile requirement], a candidate shall meet the established length of residency or domicile." As is evident from the use of the word "shall" in the above statute, the requirement is mandatory. Home Rule Charter, City of New Orleans, § 3-104, specifically requires that "candidates for district councilmember shall have been domiciled in the *542 districts from which elected for at least two years immediately preceding their election." The effect of these legal requirements taken together is that the plaintiff in this case bears the burden of proving that Mr. Richmond was not domiciled in New Orleans City Council District D for at least two years immediately preceding the scheduled April 2, 2005, election.
Generally, the legal term "burden of proof" "denotes the duty of establishing by a fair preponderance of the evidence the truth of the operative facts upon which the issue at hand is made to turn by substantive law." Black's Law Dictionary (8th ed). Under Louisiana's civil law, the "burden of proof" may shift back and forth between the parties as the trial progresses. Therefore, when the burden of proof has been specifically assigned to a particular party, that party must present sufficient evidence to establish the facts necessary to convince the trier of fact of the existence of the contested fact. Stated another way, the party on which the burden of proof rests must establish a prima facie case. If that party fails to carry his burden of proof, the opposing party is not required to present any countervailing evidence. On the other hand, once the party bearing the burden of proof has established a prima facie case, the burden then shifts to the opposing party to present sufficient evidence to overcome the other party's prima facie case. Louisiana courts commonly apply this "shifting burden of proof" in numerous specific instances, such as trial on motions for summary judgment and exceptions, and in workers' compensation cases.
The terms "residence" and "domicile" are legal terms that are not synonymous. Becker, 03-2493 at 10, 854 So.2d at 871. The most oft-cited difference between the two concepts is that a person can have several residences, but only one domicile. Becker, 03-2493 at 10, 854 So.2d at 871. Domicile is an issue of fact that must be determined on a case-by-case basis. Darnell v. Alcorn, 99-2405, p. 5 (La. App. 4 Cir. 9/24/99), 757 So.2d 716, 719, writ denied, 99-2795 (La.9/28/99), 747 So.2d 1130. La. Civ.Code art. 38 provides generally that "[t]he domicile of each citizen is in the parish wherein he has his principal establishment." Concerning "principal establishment," La. Civ.Code art. 38 states as follows:
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are hereby affected.
La. Civ.Code art. 38.
Applying the above article, Louisiana case law has traditionally held that domicile consists of two elements, residence and intent to remain. Becker, 03-2493 at 10, 854 So.2d at 871; Russell, 00-2595 at 5, 780 So.2d at 1051. When a party has not declared his intention in the manner prescribed by La. Civ.Code art. 42,[3] proof of a person's intention regarding domicile "shall depend upon circumstances." *543 La. Civ.Code art. 43. Thus, determination of a party's intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be. Davis v. Glen Eagle Ship Management Corp., 97-0878, p. 2 (La.App. 4 Cir. 8/27/97), 700 So.2d 228, 230; Laborde v. Louisiana Insurance Guaranty Association, 95-1122, p. 5 (La.App. 3 Cir. 3/6/96), 670 So.2d 614, 617; Sheets v. Sheets, 612 So.2d 842, 844 (La.App. 1st Cir.1992). "The expressed intent of the party may be at variance with the intent as evidenced by conduct." LaBorde, 95-1122 at 5, 670 So.2d at 617, quoting In re Kennedy, 357 So.2d 905, 909 (La.App. 2 Cir.1978). "Each case is unique and the courts attempt to arrive at the true intent, whether express or implied." Id.
Every person has a domicile of origin that he retains until he acquires another. Davis, 97-0878 at 2, 700 So.2d 270; LaFleur v. Seaboard Fire & Marine Insurance Co., (La.App. 3 Cir.), writ refused, 300 So.2d 185 (La.1974). Because the case law recognizes a legal presumption against change of domicile, a party seeking to show that domicile has been changed must overcome that presumption by presenting "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." Becker, 03-2493 at 11, 854 So.2d at 871; Russell, 00-2595 at 5, 780 So.2d at 1051. Of course, because domicile and residence are two different legal concepts the facts could indicate that one has "abandoned the former domicile" in favor of a new domicile even if the person continues to have a place of residence at the former domicile.
The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party's uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. The same might be said when a person specifically declares his intent pursuant to La. Civ.Code art. 42. However, in the absence of a formal declaration, when documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence, presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration,[4] homestead exemptions,[5] vehicle registration records,[6] driver's license address,[7] statements in notarial acts,[8] and *544 evidence that most of the person's property is housed at that location.[9] Obviously, the more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence.

PROOF OF CHANGE OF DOMICILE
We begin our analysis by considering the evidence presented by the plaintiff in this case in an effort to carry her initial burden of proof by establishing a prima facie case that Mr. Richmond was not domiciled in New Orleans City Council District D for at least two years immediately preceding the scheduled April 2, 2005, election. The record indicates that Mr. Richmond's family home is located at 8701 Lomond Road in the City of New Orleans, an address that the parties agree is located within New Orleans City Council District D, the district Mr. Richmond seeks to represent. The candidate's primary defense in this case is that at no time did he intend to change his domicile from that location. The plaintiff claims however that she presented overwhelming documentary and objective evidence to show that, for much of the two-year period immediately preceding the election scheduled on April 2, 2005, Mr. Richmond's domicile in fact was 4809 Eastview Drive in the City of New Orleans, an address the parties agree is located outside District D. Because the plaintiff is trying to prove that the candidate's domicile was changed from his domicile of origin (which was unquestionably at his family's home), she must overcome the presumption against change of domicile by presenting "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile," i.e., changing domicile from one place to another. Becker, 03-2493 at 11, 854 So.2d at 871; Russell, 00-2595 at 5, 780 So.2d at 1051.
The testimony in this case indicates that Mr. Richmond and his brother, Sidney Richmond, purchased the property on Eastview Drive, outside District D, in 1996 (in fact, in District E). The candidate admits that, following the purchase of the property, the Eastview Drive house became one of his places of residence. The plaintiff claims that, despite Mr. Richmond's protestations to the contrary, the Eastview Drive house became Mr. Richmond's primary domestic establishment, and thus his domicile in fact, at least as early as 1997. In support of that claim, the plaintiff presented the following pieces of documentary evidence:
1. A series of three voter registration cards: (a) Mr. Richmond's "Original Registration" dated June 19, 1995, listing his "residence address" as 8701 Lomond Road; (b) Mr. Richmond's "Application for Transfer" dated December 15, 1997, changing his registration from 8701 Lomond Road to 4809 Eastview Drive; and (c) Mr. Richmond's "Mail Voter Registration Application" dated September 20, 2004, listing his "Residence Address" as 8701 Lomond Road.[10]
2. A series of four sworn, notarized Notice of Candidacy Forms: (a) sworn form noticing Mr. Richmond's candidacy for election to the office of New Orleans City Councilmember District E, identifying his "domicile address" as 4809 Eastview Drive, dated December 12, *545 1997; (b) sworn form noticing Mr. Richmond's candidacy for election to the office of Democratic State Central Committee Member, 101st Representative District, Office B, identifying Mr. Richmond's "domicile address" as 4809 Eastview Drive, dated March 14, 2000; (c) sworn form noticing Mr. Richmond's candidacy for election to the office of State Representative, 101st Representative District, listing his "domicile address" as 4809 Eastview Drive, dated August 19, 2003; and (d) sworn form noticing Mr. Richmond's candidacy for election to the office of New Orleans City Councilmember District D, listing his "domicile address" as 8701 Lomond Road, dated February 11, 2005.[11]
3. A series of three "Candidate's Reports" filed by Mr. Richmond's mother, Maple Gaines, treasurer of his campaigns, all listing his address as 4809 Eastview Drive, dated September 2, 2003; November 5, 2003; and March 8, 2004; and a "Statement of Organization" for "Residents for Cedric Richmond" filed by Ms. Gaines, listing his address as 4809 Eastview Drive, dated February 12, 2003.[12]
4. A "Cash Sale" conveying the property at 4809 Eastview Drive to Mr. Richmond and his brother, listing his "mailing address" as 4809 Eastview Drive, dated November 1, 1996.[13]
5. A report of a Residence Burglary at 4809 Eastview Dr., listing Mr. Richmond as a "Victim/Reporting Person" and listing his "Home Address" as 4809 Eastview Drive, dated May 20, 2004, and stating that he "reside[d]" at 4809 Eastview Drive.[14]
6. A "Motor Vehicle Record" for three vehicles owned and registered by Mr. Richmond, listing his "Mailing Address" as 4809 Eastview Drive, dated "current through May 28, 2004."[15]
7. A series of "Homestead Exemption Applications" and Assessment Rolls indicating that Mr. Richmond took homestead exemptions for 4809 Eastview Drive for all eight of the tax years between 1996 and 2004.[16]
8. New Orleans Area Telephone Book white pages, listing telephone numbers for Mr. Richmond at 4809 Eastview Drive for the years 2003, 2004, and 2005.
Our review of all the above documentary evidence presented by the plaintiff in her case in chief convinces us that she presented sufficient "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile," as required to establish a prima facie case that Mr. Richmond's domicile changed from his domicile of origin at his family home on Lomond Drive to 4809 Eastview Drive, an address outside New Orleans City Council District D, on or before December 12, 1997, when he filed his sworn, notarized "Notice of Candidacy" for election to the office of New Orleans City Councilmember District E on December 12, 1997. Becker, 03-2493 *546 at 11, 854 So.2d at 871; Russell, 00-2595 at 5, 780 So.2d at 1051. In fact, we find the sworn, notarized "Notice of Candidacy" forms filed by Mr. Richmond as most telling on the issue of his intent concerning which of his two residences he had chosen as his domicile. Not only did Mr. Richmond list 4809 Eastview Drive as his "domicile address" on the 1997 form, but he also expressly certified on that form that he met the qualifications for the office for which he was then applying. In order to meet the qualifications for the office of New Orleans City Councilmember District E, Home Rule Charter, City of New Orleans, § 3-104, Mr. Richmond was required to have been domiciled in the Council District E at least two years immediately preceding the election for that office.
Mr. Richmond's own sworn statement in the December 12, 1997, notice of candidacy form that his domicile address was 4809 Eastview Drive in Council District E is by itself sufficient to rebut the presumption against change of domicile. In making that statement under oath, Mr. Richmond clearly established his intent to change his domicile from his domicile of origin at his family's home at 8701 Lomond Road in Council District D to 4809 Eastview Drive in Council District E.
Our finding that the plaintiff carried her initial burden of proving that Mr. Richmond was in fact domiciled outside of District D is not however based entirely on his multiple sworn, certified "Notice of Candidacy" forms. The plaintiff in this case presented evidence of virtually every type of indicia of domicile previously recognized by Louisiana courts. For example, the evidence presented shows that Mr. Richmond changed his voter registration to the Eastview Drive address. Additionally, the plaintiff presented objective documentary evidence to show that Mr. Richmond claimed homestead exemptions for 4809 Eastview Drive for eight years, from 1996 to 2004. Further, Mr. Richmond's address was listed as 4809 Eastview Drive on the Cash Sale for the Eastview Drive property in the conveyance records, on vehicle registration records, and on "Candidate's Reports" completed for him by his mother. All of these documents are public records. Considering all the documentary and objective evidence together, we find that the plaintiff clearly carried her initial burden of proving that the candidate was not qualified for the office he seeks because of lack of domicile. The evidence presented by the plaintiff was sufficient to make out a prima facie case that Mr. Richmond is ineligible to run for the office of New Orleans City Councilmember District D during the April 2, 2005, election.

COUNTERVAILING EVIDENCE
Because we have found that the plaintiff carried her initial burden of proof in this case, the burden shifted to the candidate to present countervailing evidence to overcome the plaintiff's proof. In this case, we have already found that the plaintiff's objective evidence was sufficient to prove that Mr. Richmond's domicile in fact changed on or before December 12, 1997, when he filed his first sworn "Notice of Candidacy" listing 4809 Eastview Drive as his "domicile address." That being the case, we have already implicitly rejected Mr. Richmond's primary claim that his domicile never changed from his domicile of origin at his family home located at 8701 Lomond Road. However, we construe Mr. Richmond's arguments and evidence to assert, alternatively, that, even if he did change his domicile to 4809 Eastview Drive at some point in the past, he changed his domicile back to his family home at 8701 Lomond Road in early 2003, more than two years immediately preceding *547 the scheduled election for City Council District D on April 2, 2005.
As we have already said, Louisiana law recognizes a legal presumption against change of domicile, and thus requires that a party seeking to show that domicile has been changed to overcome that presumption by presenting "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." Becker, 03-2493 at 11, 854 So.2d at 871; Russell, 00-2595 at 5, 780 So.2d at 1051. At this point in our analysis, the burden of showing the change of domicile back to 8701 Lomond Road falls on Mr. Richmond. We must therefore consider whether the countervailing evidence presented by Mr. Richmond qualifies as "positive and satisfactory proof of establishment of domicile as a matter of fact" at 8701 Lomond Road on or before April 2, 2003, two years immediately preceding to the scheduled election in this case.
The record contains testimony from the candidate, his mother (Ms. Gaines), and his brother (Sidney Richmond), all of whom stated that he moved back into his mother's house in either January or February 2003, in order to assist his mother in caring for his ailing stepfather. At that time, the witnesses stated, Sidney Richmond and his fiancé (later wife) started living alone in the house at 4809 Eastview Drive, at least for a short time, after which other family members and tenants allegedly occupied that address. The candidate claims that, from the day in January or February 2003 that he moved back until the present, he has always lived at 8701 Lomond Road. According to the testimony, Ms. Gaines moved to another location in June 2004, after the death of her second husband, and the candidate thereupon lived alone in the family home at 8701 Lomond Road.
The candidate and his witnesses also testified concerning his long-standing committed relationship to the community where he grew up, including his mentoring activities and his involvement with programs at the community park located across the street from his family home, where he coached Little League baseball, among other things. According to the witnesses, from the date of his father's death in 1980 until he donated his interest to his mother in 2001 to help her refinance the home, the candidate had an ownership interest in the house at 8701 Lomond Road obtained through inheritance from his father. The testimony also indicates that the candidate has always had a telephone number at 8701 Lomond Road, that he has always received mail at that address, and that he has always had unlimited access to the house. The witnesses said that Mr. Richmond has always had his own room at 8701 Lomond Street, where he keeps clothing and toiletries, and that he has always entertained there. Finally, as the district court noted, Mr. Richmond unequivocally stated that his intent has always been for his domicile to remain at the Lomond Street address.
In support of his arguments, Mr. Richmond submitted the following documentary evidence: (1) Bank One Money Market Savings Account statement, addressed to Mr. Richmond at 8701 Lomond Road, dated December 31, 2004; (2) GE Interest Plus "Summary of Investments, Interest, and Redemptions," addressed to Mr. Richmond at 8701 Lomond Road, for the period, February 26, 2004 through March 25, 2004; (3) excerpted pages from the Greater New Orleans telephone book white pages for 1986, 1988, 1990, 1999, 2000, and 2002, listing a number for "Children's Telephone" or for "Sidney and Cedric Richmond" at 8701 Lomond Road; (4) "Amended Offer" from GE Medical Systems *548 to Sidney Richmond for the position of regional sales manager located in New Orleans, dated March 27, 2003[17]; (5) Bank One statements addressed to Sidney Richmond at 4809 Eastview Drive, for June 11 through August 23, 2003 and August 13 through September 11, 2003[18]; (6) copy of Mr. Richmond's "Louisiana Personal Driver's License," listing his address as 8701 Lomond Road, issued November 17, 2004; (7) Liberty Bank statements addressed to "Residents for Cedric L. Richmond" at 8701 Lomond Road for each month of 2002, 2003, and 2004; (8) series of checks from Mr. Richmond to his mother, Ms. Gaines, for various amounts, the earliest of which is dated November 2, 2000, and the latest of which is dated December 5, 2001[19]; (9) "Petition to be Placed in Possession of Estate" filed by the candidate's mother on February 10, 1982[20]; (10) affidavit of Mr. Richmond's uncle, James E. Jackson, swearing that he resided at 4809 Eastview Drive from August 2003 until May 2004, and that he resided there at the time of the May 20, 2004 burglary[21]; (11) affidavit of Jennifer White that she lived at 4809 Eastview Drive in New Orleans from 1997 through 1999[22]; and (12) Eustis Guillmet's Voter Registration Records.[23]
Weighed against the relevant documentary evidence presented by the plaintiff, the above evidence does not qualify as "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place" as required by Louisiana case law for proving a change of domicile. Becker, 03-2493 at 11, 854 So.2d at 871; Russell, 00-2595 at 5, 780 So.2d at 1051. Mr. Richmond has failed to prove that he changed his domicile back to his family home at 8701 Lomond Road in early 2003, more than two years immediately preceding to the April 2, 2005, scheduled election.
The district court judgment in this case is based on its decision to credit the candidate's "uncontroverted testimony," and the majority opinion of the court of appeal affirms the district court's judgment, at least in part because it did not find manifest error in the district court's credibility call. Longstanding case law from this court demands that courts of appeal give great deference to a trier of fact's factual findings based on credibility judgments. See Rosell v. ESCO, 549 So.2d 840, 845 (La.1989). See also Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The principles set *549 forth in Rosell have been uniformly affirmed in numerous cases since it was issued. However, even in Rosell, we stated that "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." Id. Recently, we clarified that principle, stating as follows:
There is no legitimate conflict in testimony where documents or objective evidence so contradict the witness's story, or the story presented by the witness is so internally inconsistent or implausible on its face, that a reasonable fact-finder could not give credence to the witness's testimony. Faced with such circumstances, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
Henderson v. Nissan Motor Corp., 2003-606 (La.2/6/04), 869 So.2d 62, 68-69 (internal citations to Stobart, 617 So.2d 880, 882, omitted). The objective, documentary evidence in this case clearly contradicts Mr. Richmond's testimony that he changed his domicile back to his family home at 8701 Lomond Road in early 2003 (not just took up residence partially from January 2003 through April 2005), and this is so regardless of whether he lived alternately in two residences.
This finding is based principally on two matters. First, records submitted in evidence indicate that Mr. Richmond continued to claim a Louisiana Homestead Exemption on 4809 Eastview Drive through the end of 2004. According to La.Rev. Stat. 47:1703(B), the status of real property in Orleans Parish for homestead exemption purposes on the first day of August of each year "shall determine its ... exemption from taxation for the following calendar year." That being the case, Mr. Richmond's act of signing the 2004 Homestead Exemption Application form is strong evidence that he continued to consider 4809 Eastview Drive his domicile at least through August 1, 2003.
Second, and perhaps even more importantly, Mr. Richmond certified in his sworn, notarized "Notice of Candidacy" for election to the office of State Representative, 101st Representative District, filed on September 19, 2003, that his "domicile address" was 4809 Eastview Drive. Mr. Richmond's September 19, 2003, statement under oath is positive proof of his intent concerning domicile on that date. Those two pieces of evidence clearly show that Mr. Richmond continued to consider the 4809 Eastview Drive address as his "principal establishment" at least through September 9, 2003.
In the past decade, this court has considered four somewhat relevant cases in which the holdings favored candidates-Becker v. Dean, 03-2493, 854 So.2d 864; Russell v. Goldsby, 00-2595, 780 So.2d 1048, Dixon v. Hughes, 587 So.2d 679; and Pattan v. Fields, 95-2375, 661 So.2d 1320. In all four of those cases, the major difference was that the challengers had weaker cases and this court found that they failed to carry their outset burdens of proof. In the case involving the candidate, Yvonne Hughes, which was one of the cases relied on by the court of appeal in this case, the notice of candidacy was filed outside of the relevant time period, whereas in this case the September 19, 2003, form falls within the relevant two-year period immediately preceding the election. See Hughes, 587 So.2d 679.
As previously stated, any doubt concerning the qualifications of a candidate should *550 be resolved in favor of allowing the candidate to run for public office. However, the record evidence in this case leaves no doubt that Mr. Richmond was not qualified to run for New Orleans City Council District D because he was not domiciled in the district at least two years immediately preceding the April 2, 2005, election, as required by Home Rule Charter, City of New Orleans, § 3-104. The well-documented policy set forth in numerous Louisiana cases favoring candidacy cannot prevail in the face of so much evidence that the candidate does not meet the qualifications of the office he seeks. The law as applied to the facts governs our disposition in this case.

DECREE
For the above-stated reasons, judgment is rendered in favor of plaintiff and against defendants on plaintiff's petition objecting to candidacy, declaring Cedric Richmond ineligible as a candidate for the office of Councilmember District "D" for the City of New Orleans, and he is accordingly disqualified.[24] It is hereby directed that the Secretary of State of the State of Louisiana be served with a certified copy of the final judgment in this case pursuant to La.Rev.Stat. 18:1410. The Secretary of State is ordered to void those votes for Cedric Richmond that may have been cast in the on-going absentee voting or that might be cast in the election of April 2, 2005, should the Secretary of State be unable to restructure the ballot and/or voting machines before that time. Id.
COURT OF APPEAL JUDGMENT REVERSED; JUDGMENT RENDERED.
KIMBALL, J., concurs in the result and assigns reasons.
WEIMER, J., concurs for the reasons assigned by KIMBALL, J.
KIMBALL, J. concurring in result.
Although I agree with the result reached by the majority, I disagree with the analysis it employs. In my view, the district court committed legal error in failing to accord the proper legal significance to the sworn and notarized notice of candidacy form filed on August 19, 2003, within the relevant two year period of domicile in District D required by the Home Rule Charter. It is apparent the lower courts relied heavily on this court's opinion in Dixon v. Hughes, 587 So.2d 679 (La.1991), in ruling in favor of the candidate. While the Dixon case involved almost identical evidence regarding the candidate's domicile, I believe it is distinguishable because the notice of candidacy form at issue in that case was not filed within the relevant one year period. In my view, the sworn and notarized notice of candidacy form filed within the two year period immediately preceding the election, which was the relevant period in this case, was a critical piece of evidence that sufficiently established the candidate's domicile within District E during the time period he was required to be domiciled within District D. In this respect, the case at bar differs from Dixon. When he executed the notice of candidacy form for election to the office of State Representative, 101st Representative District, the candidate could have listed either the Lomond Road or the Eastview Drive address as both addresses were within the representative district he sought to represent. The candidate chose to list Eastview Drive as his "domicile *551 address." In my view, this sworn form established his domicile at the Eastview address. The sworn notice of candidacy "should not be dismissed lightly." Dixon, 587 So.2d at 681. The other documentary evidence serves to corroborate the domicile was established in District E. Because the candidate was clearly domiciled within District E during the two years immediately preceding the election, I agree with the majority's decision that defendant is not qualified for the office he seeks.
NOTES
[1] La. Sup.Ct. Rules, Rule X, § 5(C) provides that no application for rehearing shall be entertained in election cases.
[*] Johnson, J., recused.
[1] The district court initially dismissed the plaintiff's petition on Mr. Richmond's exception of prescription because the hearing was not scheduled within four days of the filing of the petition, as required by La.Rev.Stat. 18:1409. The court of appeal affirmed. Landiak v. Richmond, 05-0309 (La.App. 4th Cir.3/2/05), 899 So.2d 65. However, this court reversed the judgment dismissing the plaintiff's petition, finding that it was not prescribed because it was timely filed within seven days of the close of qualifying as required by La.Rev.Stat. 18:1405(A). Landiak v. Richmond, 05-C-0519 (La.3/9/05), 896 So.2d 7.
[2] "Standing to object to candidacy" is governed by La.Rev.Stat. 18:491, which provides that "[a] registered voter may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office for which the plaintiff is qualified to vote." The parties in this case stipulated at trial that the plaintiff has standing to challenge Mr. Richmond's qualifications for candidacy.
[3] La. Civ.Code art. 42 provides as follows concerning proof of intent concerning domicile by written declaration:

This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove.
This declaration is made in writing, is signed by the party making it, and registered by the recorder.
[4] See Becker, 03-2493, 854 So.2d 864; Steinhardt v. Batt, 00-0328 (La.App. 4 Cir. 2/11/99), 753 So.2d 928.
[5] See Russell v. Goldsby, 00-2595 (La.9/22/00), 780 So.2d 1048; Villane v. Azar, 566 So.2d 645 (La.App. 4 Cir.1990). Further, a decision to decline to take a homestead exemption in a residence in parish or district other than the one the persons claims as his domicile has been considered as evidence that the person did intend for his domicile to be in the other location. Becker, 03-2493, 854 So.2d 864; McClendon v. Bel, 00-2011 (La. App. 1 Cir. 9/7/00), 797 So.2d 700.
[6] See Pattan, 95-2375, 661 So.2d 1320; Autin v. Terrebonne, 612 So.2d 107 (La.App. 1 Cir. 1992); Mix v. Alexander, 318 So.2d 130 (La. App. 4 Cir.1975).
[7] See Steinhardt, 00-0328, 753 So.2d 928; Pattan, 95-2375, 661 So.2d 1320; Autin, 612 So.2d 107.
[8] Mix, 318 So.2d 130.
[9] See Villane, 566 So.2d 645.
[10] Obtained by subpoena from the Office of Louis Keller, Orleans Parish Registrar of Voters.
[11] Obtained from the Office of Fox McKeithen, Secretary of State for the State of Louisiana.
[12] Obtained from the Office of the Executive Secretary for the Louisiana Board of Ethics.
[13] Obtained from the Conveyance Office of Gasper Schiro.
[14] Obtained from the New Orleans Police Department.
[15] Obtained from the Louisiana Department of Motor Vehicles internet website.
[16] Obtained from the Office of Erroll G. Williams, Assessor, Third Municipal District of New Orleans.
[17] This document was introduced to show that Mr. Richmond's brother, Sidney Richmond, and his fiancée (now wife) moved back to New Orleans sometime around that date.
[18] These documents were introduced to show that Sidney Richmond lived at 4809 Eastview Drive during the relevant period.
[19] These checks were introduced to show that Mr. Richmond paid expenses at 8701 Lomond Road during the relevant time period.
[20] This document was presented to show that Mr. Richmond gained an ownership in the home in 1980 when his father died.
[21] This document was introduced to show that Mr. Jackson, not Mr. Richmond, lived at 4809 Eastview Drive at the time of the burglary, contrary to the statement in the police report that Mr. Richmond lived there at the time.
[22] This document was introduced to show that Ms. White, not Mr. Richmond, lived at 4809 Eastview Drive from 1997 through 1999.
[23] These documents, relative to another candidate for New Orleans City Council District D in this very same election, were introduced by the candidate in an effort to call into question the plaintiff's credibility. If she was so concerned about seeing that only qualified persons ran, she would also have challenged Mr. Guillmet's candidacy, Mr. Richmond asserts.
[24] La. Sup.Ct. Rules, Rule X, § 5(C) provides that no application for rehearing shall be entertained in election cases.