# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NUMBER 2020 CE 0716

COURT OF APPEAL
1ST CIRCUIT
FILED

2020 AUG 13 AM 10: 59

RODD NAQUIN
CLERK

## MILLARD F. CRANCH, JR., RICHARD J. BRAZAN, JR., AND GLENN R. DUCOTE

### VERSUS

## THE HONORABLE TARA LYNETTE WICKER, AND THE HONORABLE DOUG WELBORN

Judgment Rendered: **AUG 1 3 2020**

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge, Louisiana
Docket Number C-698444

Honorable Timothy Kelley, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| William P. Bryan, III<br>Baton Rouge, LA | Counsel for Plaintiffs/Appellants,<br>Millard Cranch, Jr., Richard<br>Brazan, Jr., and Glenn Ducote |
| Jeffrey K. Coreil<br>Lafayette, LA | Counsel for Defendant/Appellee,<br>Tara Lynette Wicker |
| John C. Walsh<br>Jeffrey K. Cody<br>Caroline M. Tomeny<br>Baton Rouge, LA | Counsel for Defendant,<br>Doug Welborn, Clerk of Court for<br>the Parish of East Baton Rouge |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., GUIDRY, WELCH, THERIOT, AND WOLFE, JJ.

Guidry, J. (by vlbw) concurs with reasons

Theriot, J. (by vlbw) concurs with reasons.

Welch, J. (by vlbw) dissents with reasons.

Wolfe, J. (by vlbw) dissents with reasons.

**WHIPPLE, C.J.**

In this matter challenging the candidacy of Tara Wicker for the office of Mayor-President, Metro Council, City of Baton Rouge, plaintiffs appeal the district court's judgment denying their objection to candidacy. For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

On July 22, 2020, Tara Lynette Wicker filed a sworn "Notice of Candidacy" form with the East Baton Rouge Parish Clerk of Court, declaring her intent to run for the office of Mayor-President, Metro Council, City of Baton Rouge.

On July 31, 2020, Millard F. "Sonny" Cranch, Jr., Richard J. Brazan, Jr., and Glenn R. Ducote, qualified electors in the Parish of East Baton Rouge, filed an objection to Wicker's candidacy, contending that Wicker falsely certified in her Notice of Candidacy that she had filed income tax returns for each of the previous five tax years, averring the Louisiana Department of Revenue cannot confirm the filing of tax returns by Wicker for the tax years 2016 and 2018. Thus, plaintiffs sought a judgment disqualifying Wicker as a candidate as a result of the alleged false certification. See LSA-R.S. 18:463(A)(2)(a)(iv), 18:492(A)(7), & 18:494.

The district court conducted a hearing in the matter on August 4, 2020, and by judgment dated August 6, 2020, the district court denied plaintiffs' objection to Wicker's candidacy and dismissed plaintiffs' petition with prejudice. From this judgment, plaintiffs appeal.

## LAW AND ANALYSIS

To qualify as a candidate for public office, a candidate is required to file a Notice of Candidacy. LSA-R.S. 18:461. In the Notice of Candidacy, the candidate shall certify, in part, as follows:

2

(iv) Except for a candidate for United States senator or representative in congress, that for each of the previous five tax years, he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or state income tax return or both, or was not required to file either a federal or state income tax return or both.

* * *

(ix) That all of the statements contained in it are true and correct.

LSA-R.S. 18:463(A)(2)(a)(iv) & (ix).

Pursuant to the Election Code, grounds for disqualification of the candidate exist where the candidate falsely certifies in the Notice of Candidacy that for each of the previous five tax years the candidate has filed her federal and state income tax returns, has filed for an extension of time for filing either her federal or state income tax return or both, or was not required to file either a federal or state income tax return or both. LSA-R.S. 18:492(A)(7); see Russo v. Burns, 2014-1963 (La. 9/24/14), 147 So. 3d 1111, 1114.

Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to one's candidacy bears the burden of proving the candidate is disqualified. Landiak v. Richmond, 2005-0758 (La. 3/24/05), 899 So. 2d 535, 541. Nonetheless, although Louisiana law favors candidacy, once the party bearing the burden of proof in an objection to candidacy case has established a *prima facie* case that the candidate is disqualified, the burden shifts to the party opposing the disqualification to overcome the other party's *prima facie* case. Russo, 147 So. 3d at 1114; Landiak, 899 So. 2d at 542. If that party is unable to successfully rebut the evidence establishing the *prima facie* case for disqualification, the objection to the candidacy is to be sustained and the candidate is to be disqualified. LSA-R.S. 18:494(A); See Russo, 147 So. 3d at 1114.

3

In the instant case, Wicker's Notice of Candidacy contains the required certification regarding the filing of her income taxes, a certification which plaintiffs contend is false because Wicker had not filed her 2016 and 2018 state income tax returns on the date she filed her Notice of Candidacy. On appeal, plaintiffs contend that the district court erred in allowing inadmissible hearsay testimony, in finding Wicker met her burden of proof in rebutting plaintiffs' *prima facie* case with only her uncorroborated and self-serving testimony, and in dismissing plaintiffs' case without any competent and admissible evidence that Wicker had filed her 2016 and 2018 tax returns before filing her Notice of Candidacy.

In addition to offering Wicker's Notice of Candidacy, which included the required certification as to the filing of her federal and state income tax returns for the previous five years, plaintiffs also introduced a July 24, 2020 letter from the Louisiana Department of Revenue (LDR), in response to a public records request regarding the filing of tax returns for Tara Lynette Wicker. In that letter, the custodian of public records for the LDR confirmed the filing of tax returns for the tax years 2015, 2017, and 2019, but stated that the LDR could not confirm tax filings for the tax years 2016 and 2018.[1] The LDR's custodian of public records also testified at the hearing that another search of the LDR's records in response to a subsequent July 27, 2020 public records request limited solely to Wicker's 2016 state income tax return resulted in a July 28, 2020 response, wherein the LDR again stated that it could not confirm a tax filing for the 2016 tax year.

In reasons for judgment, the district court found that the testimony and

---

[1]Plaintiffs also filed into evidence Wicker's Tier 2 Personal Financial Disclosure Statements for the years 2016 and 2018, in which Wicker declared that respectively that she had filed for an extension of her 2016 Louisiana state income tax return (and federal return) and that she had filed her 2018 Louisiana state income tax return.

4

evidence offered by plaintiffs established a *prima facie* case that Wicker had not filed her Louisiana state income tax returns for the 2016 and 2018 tax years, a finding that is supported by the record on appeal. Thus, the burden shifted to Wicker to rebut plaintiffs' *prima facie* showing. See Russo, 147 So. 3d at 1114.

Wicker testified that she first learned that the LDR had no record of her 2016 and 2018 tax returns when plaintiffs' objection to her candidacy was filed. Regarding her 2016 tax return, Wicker testified that her tax preparer had given her the 2015 and 2016 tax returns in one envelope and that she had personally mailed the returns together in one envelope. While she acknowledged that she did not mail the 2015 and 2016 returns by certified mail and offered no other documentary evidence to establish that those returns had been delivered to the LDR prior to the filing her July 22, 2020 Notice of Candidacy, Wicker testified at the hearing that she had received a refund for the 2015 tax year, which return she had mailed in the same envelope as the 2016 return. Thus, Wicker testified that because she had received a refund on her 2015 tax return, she believed that the LDR had also received her 2016 return.

Regarding her 2018 state income tax return, Wicker stated her tax preparer had prepared her 2018 return and had "walked those documents to the L.D.R." and personally submitted the return.

Wicker further testified that she went to the LDR office to investigate her tax record on August 3, 2020, after receiving notice of this suit. According to Wicker, an LDR employee told her that the LDR had a "history of misplacing returns."[2] Wicker further testified that she was able

---

[2]No objection was made to this testimony on the basis of hearsay or on any other basis.

to file with the LDR that day what she termed as a "replacement" 2016 state income tax return. Wicker also introduced into evidence an August 3, 2020 letter from the LDR representative with whom she had spoken, indicating that all returns had been submitted.[3]

In oral reasons for judgment, the district court noted that the August 3, 2020 LDR letter submitted by Wicker did not by itself defeat plaintiffs' *prima facie* showing. However, the court further concluded that, after considering Wicker's testimony, which it found to be "credible and compelling," together with the August 3, 2020 letter, the evidence presented by Wicker "overwhelmingly convinces the court that [Wicker] did file" her tax returns. Accordingly, the court dismissed plaintiffs' challenge to Wicker's candidacy.

However, on review, we must conclude that the trial court manifestly erred in finding that Wicker had filed all of her tax returns as of the date she filed her Notice of Candidacy. As observed by the Louisiana Supreme Court in Russo, where Louisiana state income tax returns are mailed to the LDR through the United States Postal Service (USPS), returns which have not been **delivered** to the LDR have not been **filed** pursuant to the clear language of the LDR's regulations. Russo, 147 So. 3d at 1114 (citing

---

[3]Plaintiffs contend on appeal that they objected to this letter on the basis that it had not been authenticated. However, a review of the record on appeal indicates that while plaintiffs' counsel questioned the veracity of the letter, he did not object to its introduction into evidence, stating to the judge, "[T]he person who has filed it is not here to testify to the veracity of it, so I would respectfully request authenticity, **but I guess you can let it in.**" (Emphasis added).

LAC 1:1.4991(B)(1)).[4]

In the instant case, we first note that certain factual findings of the district court upon which it relied to find that Wicker had carried her burden are manifestly erroneous. Specifically, the district court found as a fact that, based on Wicker's testimony, she had received refunds for the 2016 and 2018 tax years, indicating that those returns had been delivered to the LDR. However, while Wicker initially testified that she had received refunds every year since she had filed, she later testified that had "never got[ten] anything" for her 2016 tax return. Also, with regard to the 2018 return, she testified that she was "anticipating a refund" from the 2018 tax return.

With regard to the 2016 return, the district court may have relied on Wicker's testimony that she had mailed her 2015 and 2016 returns together in one envelope, along with the testimony and evidence establishing that the 2015 return had been delivered to the LDR, in finding that Wicker had established that her 2016 return had also been "delivered" to the LDR. Nonetheless, without determining whether that testimony and evidence would be sufficient under Russo to rebut plaintiffs' *prima facie* showing or if Russo requires some affirmative documentary proof to establish delivery of a return mailed through the USPS, we note that Wicker presented absolutely no evidence showing that her 2018 return had been delivered to the LDR prior to July 22, 2020.

"[A] return ... delivered by the taxpayer or a representative of the taxpayer is deemed filed on **the date it is delivered** to the department's headquarters or a regional office." LAC61:1.4991(B)(3) (emphasis added).

---

[4]Section 4911(B)(1) of Title 61, Part I of the Louisiana Administrative Code provides that "a return ... in a properly addressed envelope with sufficient postage **delivered** by the United States Postal Service is **deemed filed** on the date postmarked by the United States Postal Service." (Emphasis added).

Although Wicker testified with regard to her 2018 return that her tax preparer had "walked those documents to the L.D.R." and personally submitted them, notably, she did not testify as to **when** he had delivered the return to the LDR. Additionally, she did not call her tax preparer as a witness or offer any documentary evidence to establish **when** he had delivered the 2018 return to the LDR. Moreover, while Wicker testified that she had obtained an August 3, 2020 letter from LDR indicating that all of her tax returns had been filed and that no penalties or interest were owed, when asked if that was satisfied prior to July 22, Wicker responded, "I do not know." Finally, when asked if, other than the 2016 "replacement" tax return that she filed with the LDR on August 3, 2020, anything else regarding her taxes had been filed with the LDR on her behalf between July 22 and August 3, Wicker replied, "That, I do not know."

Even assuming that Wicker's testimony that she had received a refund on her 2015 tax return which had been mailed together with her 2016 return was sufficient to establish delivery of her 2016 return to the LDR, Wicker still failed to carry her burden of rebutting plaintiffs' *prima facie* case. Without knowing whether her tax preparer had in fact delivered her 2018 tax return to the LDR by July 22, 2020, or otherwise ensuring its delivery, Wicker "could not have known" whether or not all of her tax returns for the previous five years had been filed at the time she signed her Notice of Candidacy. See generally Russo, 147 So. 3d at 1114; also see generally Smith v. Charbonnet, 2017-0634 (La. App. 4th Cir. 8/2/17), 224 So. 3d 1055, 1059-1060 (where candidate was assured by his tax preparer that his returns had been filed but offered no evidence that they had in fact been "filed" as defined by LDR regulation, candidate was disqualified).

8

Based on the foregoing and on our review of all the testimony and evidence presented, we are constrained to conclude that the district court manifestly erred in finding that Wicker rebutted plaintiffs' *prima facie* showing by establishing that her tax returns had been filed. Rather, given the lack of any testimony or evidence as to when her 2018 tax return was delivered to the LDR, Wicker failed to rebut plaintiffs' evidence establishing a *prima facie* case for disqualification. As such, the objection to the candidacy must be sustained and the candidate disqualified. LSA-R.S. 18:494(A); See <u>Russo</u>, 147 So. 3d at 1114.

### DECREE

For the above and foregoing reasons, we reverse the district court's August 6, 2020 judgment that dismissed plaintiffs' objection to candidacy. We hereby render judgment disqualifying Tara Lynette Wicker from candidacy for the office of Mayor President, Metro Council, City of Baton Rouge.

**REVERSED AND RENDERED.**

| | |
|---|---|
| MILLARD F. CRANCH, JR., RICHARD J. BRAZAN, JR., AND GLENN R. DUCOTE | STATE OF LOUISIANA |
| VERSUS | COURT OF APPEAL |
| THE HONORABLE TARA LYNETTE WICKER, AND THE HONORABLE DOUG WELBORN | FIRST CIRCUIT |
| | NUMBER 2020 CE 0716 |

**GUIDRY, J., concurring in the result.**

I respectfully concur in the result reached by the majority's decision to disqualify Wicker from candidacy for the office of Mayor-President, Metro Council, City of Baton Rouge. I write separately to address the significance and bearing I believe the Supreme Court's pronouncements in Russo v. Burns, 2014-1963 (La. 9/24/14), 147 So. 3d 1111, have on this case.

In Russo, the Louisiana Supreme Court addressed the burden on a candidate to rebut a *prima facie* showing that the candidate had falsely certified with regard to the filing of tax returns in the candidate's Notice of Candidacy. Russo, 147 So. 3d at 1114. For returns mailed to the Louisiana Department of Revenue (the LDR) through the United States Postal Service, the Court observed that returns which have not been **delivered** to the LDR have not been **filed** pursuant to the clear language of the LDR's regulations. Russo, 147 So. 3d at 1114 (citing LAC 1:1.4991(B)(1)). Thus, the Court reasoned that without sending the returns via certified mail or otherwise ensuring their **delivery** to LDR, the candidate could not have known whether or not his tax returns had been **filed** pursuant to Louisiana regulation when the candidate signed his Notice of Candidacy. Russo, 147 So. 3d at 1114. Accordingly, the Court concluded that the lower courts had erred as a matter of law in relying upon testimony presented by the candidate that the returns

1

had been mailed as sufficient evidence to rebut the plaintiff's *prima facie* case that the returns had not been filed. Russo, 147 So. 3d at 1113-1114.

In the instant case, because, as found by the district court, plaintiffs established a *prima facie* case that Wicker had not filed her Louisiana state income tax returns for the 2016 and 2018 tax years, the burden shifted to Wicker to rebut plaintiffs' *prima facie* case. Landiak v. Richmond, 2005-0758 (La. 3/24/05), 899 So. 2d 535, 542. However, as noted by the majority, the district court made and relied upon certain factual findings in concluding that Wicker had carried her burden that are not supported by the record and, thus, are manifestly erroneous. Specifically, while the district court found as a fact that Wicker had received refunds for the 2016 and 2018 tax years, thus indicating that those returns had been delivered to the LDR, a review of Wicker's testimony as a whole demonstrates that she had not received a refund for either of those two tax years.

More importantly, however, based on the pronouncements of Russo, I would conclude that the district court erred *as a matter of law* in relying upon Wicker's self-serving testimony that she had mailed the 2016 return and that her 2018 return had been delivered to the LDR. While Wicker testified that she mailed her 2016 return in the same envelope as the 2015 return, she acknowledged that she did not mail the returns via certified mail and offered no other evidence to demonstrate that she could "otherwise ensur[e] their **delivery** to LDR." See Russo 147 So. 3d at 1114. She offered no proof of mailing the 2016 return, no evidence to corroborate her testimony that she in fact mailed the 2016 return together with the 2015 return, no certified return receipt indicating **delivery** of the 2016 return to the LDR, and, indeed, no documentary evidence that she had received a refund from her 2015 state income tax return.

2

Under these circumstances, I would find that this court is compelled to conclude that Wicker's self-serving testimony alone that she **mailed** the 2016 return is legally insufficient to rebut plaintiffs' *prima facie* showing that the 2016 return had not been filed as of the date Wicker signed her Notice of Candidacy. See Russo, 147 So. 3d at 1114.

With regard to her 2018 return, which Wicker claimed was hand-delivered to the LDR by her tax preparer, "[a] return … delivered by the taxpayer or a representative of the taxpayer is deemed filed on **the date it is delivered** to the department's headquarters or a regional office." LAC61:1.4991(B)(3) (emphasis added). As noted by the majority, while Wicker testified that her tax preparer had personally delivered her 2018 state income tax return to the LDR, she presented absolutely no evidence to establish that her 2018 return had been **delivered** to the LDR on or prior to July 22, 2020. Further, she did not call her tax preparer as a witness or offer any documentary evidence to establish **the date** upon which he allegedly **delivered** the 2018 return to the LDR.

Additionally, with regard to the August 3, 2020 letter Wicker obtained from LDR indicating that all of her tax returns had been filed and that no penalties or interest were owed as of that date, a date well after the July 22, 2020 signing of her Notice of Candidacy, when asked if that was satisfied **prior to** July 22, Wicker responded, "I do not know." Also, when asked if, other than the 2016 "replacement" tax return that she filed with the LDR on August 3, 2020, anything else regarding her taxes had been filed with the LDR on her behalf between July 22 and August 3, Wicker similarly replied, "That, I do not know."

Thus, I agree with the majority that without sending her 2016 return by certified mail or otherwise ensuring its **delivery** to the LDR and without establishing, either through testimony or documentary evidence, that her tax

3

preparer had in fact **delivered** her 2018 tax return to the LDR on or before July 22, 2020, Wicker could not have known whether or not all of her tax returns for the previous five years had been filed at the time she signed her Notice of Candidacy. See Russo, 147 So. 3d at 1114; also see Smith v. Charbonnet, 2017-0634 (La. App. 4th Cir. 8/2/17), 224 So. 3d 1055, 1059-1060 (where candidate was assured by his tax preparer that his returns had been filed but offered no evidence that they had in fact been "filed" as defined by LDR regulation, candidate was disqualified).

However, unlike the majority herein, based on the record before us, I would find that, under the pronouncements of Russo, this court must conclude that the district court erred *as matter of law* in accepting Wicker's self-serving testimony unsupported by any documentary evidence as to the date of actual **delivery** of her 2016 and 2018 state income tax returns to the LDR. Rather, her uncorroborated testimony is legally insufficient under Russo to establish that her 2016 and 2018 state income tax returns had been filed with the LDR as of the time of her signing her Notice of Candidacy for the office of Mayor-President, Metro Council, City of Baton Rouge. See Russo, 147 So. 3d at 1114, & Smith, 224 So. 3d at 1059-1060.

For these reasons, I respectfully concur in the result.

4

| | |
|---|---|
| MILLARD F. CRANCH, JR., RICHARD J. BRAZAN, JR., AND GLENN R. DUCOTE | STATE OF LOUISIANA |
| VERSUS | COURT OF APPEAL |
| THE HONORABLE TARA LYNETTE WICKER, AND THE HONORABLE DOUG WELBORN | FIRST CIRCUIT NUMBER 2020 CE 0716 |

**THERIOT, J., concurring.**

I agree with the outcome reached by the majority. I write separately to point out that although election laws are interpreted to give the electorate the widest possible choice of candidates, the legislature has created additional requirements to qualify as a candidate since Landiak v. Richmond, 2005-0758 (La. 3/24/05), 899 So.2d 535. Today's candidates for state office must certify that they are in good standing with the Louisiana Department of Revenue (LDR) (see La. R.S. 18:463(2)(a)(iv)) and the Louisiana Board of Ethics (see La. R.S. 18:463(2)(a)(v),(vi) and (vii)). These amendments to the election code should be strictly construed to carry out the legislative intent to prohibit individuals who have unpaid taxes and/or ethics fines from seeking office.

In the matter before us, I find the trial court correctly found the plaintiffs established a *prima facie* case that Wicker did not file her 2016 and 2018 state income tax returns. The burden shifted to Wicker to prove that the 2016 and 2018 tax returns were indeed filed by July 22, 2020 (the date Wicker filed her Notice of Candidacy). I disagree with the trial court that Wicker successfully rebutted the *prima facie* case.

I find no corroboration in the record to support Wicker's assertion that the 2016 and 2018 tax returns were filed prior to July 22, 2020. As pointed out by the majority, nothing in the record establishes that the 2018 tax return was filed prior to the July 22, 2020 certification. Thus, I agree with the majority that the trial court

1

manifestly erred in finding that Wicker successfully rebutted the prima facie case as it pertained to her 2018 tax return.

I also find no corroboration in the record to support Wicker's assertion that the 2016 tax return was filed with LDR prior to July 22, 2020. In fact, Wicker's testimony establishes that she filed a 2016 "replacement" return on August 3, 2020. Such an action clearly establishes that the 2016 tax return was not part of LDR's records as of July 22, 2020. Therefore, I find the trial court manifestly erred in finding that Wicker successfully rebutted the prima facie case as it pertained to her 2016 tax return.

| | |
|---|---|
| MILLARD F. CRANCH, JR., RICHARD J. BRAZAN, JR., AND GLENN R. DUCOTE | STATE OF LOUISIANA |
| | COURT OF APPEAL |
| VERSUS | |
| THE HONORABLE TARA LYNETTE WICKER, AND THE HONORABLE DOUG WELBORN | FIRST CIRCUIT |
| | NUMBER 2020 CE 0716 |

WELCH and WOLFE, JJ., dissenting.

Election laws must be interpreted to give the electorate the widest possible choice of candidates. As such, any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. Landiak v. Richmond, 2005-0758 (La. 3/24/05), 899 So. 2d 535, 541. Moreover, as a reviewing court, this court must give great weight to the district court's factual findings and should not disturb its reasonable credibility evaluations where there is a conflict in the testimony. See McGlothin v. Christus St. Patrick Hospital, 2010-2775 (La. 7/1/11), 65 So. 3d 1218, 1230-1231.

In this instant case, the district court made a credibility determination, specifically finding Wicker's testimony to be "credible and compelling." Moreover, the record herein amply supports the district court's factual finding that Wicker's 2016 return, together with her 2015 return, was "delivered" to and thus filed with the LDR. See generally Crosby v. Cantrelle, 20-252 (La. App. 5th Cir. 8/10/20), ___ So. 3d ___, ___ (challenge to candidacy was denied where, despite the LDR's statement that it could not confirm tax filings for the 2017 and 2018 tax years, candidate's wife testified that she had mailed the returns by certified mail and had followed the progress of the returns on the United States Postal Service's website (printed copies of which were introduced into the record), which demonstrated delivery to the LDR).

1

Additionally, with regard to the 2018 return, Wicker unequivocally testified that her tax preparer had personally delivered the return to the LDR, thus establishing filing pursuant to LAC61:1.4991(B)(3). Wicker further testified that she had received refunds for the 2015, 2017, and 2019 tax years, which, to her belief, indicated that there were no issues with her 2016 and 2018 tax returns. She also explained that she never received any indication from the LDR that she had not submitted her tax returns. Thus, she had "no qualms and no hesitation" about signing her Notice of Candidacy and had "every understanding" that all her tax returns had been filed when she signed her Notice of Candidacy on July 22, 2020.

A review of the record on appeal establishes that the district court considered the objective evidence of the August 3, 2020 letter from the LDR, indicating that there were no issues with Wicker's tax returns, coupled with her testimony, which the district court found credible and compelling, that she filed the tax returns in question. Wicker's testimony, corroborated by the evidence she presented, was sufficient to satisfy her burden of proof that she did not falsely certify on her Notice of Candidacy that she had filed her state income tax returns at issue herein.

Moreover, regarding the majority's reliance on Russo v. Burns, 2014-1963 (La. 9/24/14), 147 So. 3d 1111, the instant case is factually dissimilar to Russo and, therefore, in my view, not governed by Russo. In Russo, as of *only five days* before the candidate attempted to qualify as a candidate in 2014, the candidate had not filed his 2010, 2011, 2012, and 2013 returns and, thus, knew of "the potential problems regarding his filing status." Russo, 147 So. 3d at 1113, 1114. However, in the instant case, Wicker presented testimony and evidence regarding the delivery of her 2016 and 2018 tax returns to the LDR and also testified that she had received refunds for both her 2017 and 2019 returns, indicating to her that there

2

were no problems with her 2016 and 2018 returns, and, thus, that she had *no reason* to believe, upon the signing of her Notice of Candidacy, that all of her tax returns had not been filed.

Considering the record on appeal and according the proper deference to the district court's credibility determinations as required of this court, we would affirm the district court's dismissal of plaintiffs' objection to Wicker's candidacy. Wicker successfully rebutted plaintiffs' *prima facie* showing and, thus, should be allowed to maintain her candidacy for Mayor-President, Metro Council, City of Baton Rouge. For these reasons, we respectfully dissent.