JUDITH SENAC SHERAR
v.
JULIE BESSE AND LLOYD BESSE, JR.
No. 2007 CA 2003
Court of Appeals of Louisiana, First Circuit.
July 23, 2008.
JOHN A. KELLER, Counsel for Plaintiff/Appellee Judith Senac Sherar.
MARION B. FARMER, SUELLEN RICHARDSON, Counsel for Defendant/Appellant Julie Besse.
Before: CARTER, C.J., WHIPPLE, PARRO, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
The defendant/appellant, Julie Besse,[1] appeals a judgment that ordered her to pay to the plaintiff, Judith Senac Sherar, the sum of $48,709.42, together with interest, as repayment of a loan made by the plaintiff's father, Charles Senac (Mr. Senac), to the defendant and her son[2] approximately eight to ten months prior to Mr. Senac's death.

Factual Background
Mr. Senac, the plaintiff's father, died on January 9, 2003. Prior to his death, in April 2000, he placed $100,000.00 in a certificate of deposit at Resource Bank in St. Tammany Parish. This certificate was placed in both his and the plaintiff's name and was paying interest in the amount of 8%. At the same time, he created similar certificates of deposit in the same amounts for his other four living children, each in their own name. He often used these certificates as collateral when lending money to his children and other close relatives.
In February 2002, approximately ten months before his death, Mr. Senac was approached by a longtime close friend of his, the defendant Julie Besse, about getting a loan from him in the amount of $50,000.00 for her son, Lloyd, so he could purchase immovable property and a trailer in Bush, Louisiana. Mr. Senac agreed to make the loan and took out a loan himself from Resource Bank in the amount of $50,000.00. He used the aforementioned certificate of deposit at Resource Bank in his and the plaintiff's names as collateral for his $50,000.00 loan, which was confected on February 19, 2002.
The agreement allegedly between Mr. Senac and the Besses was not reduced to writing; therefore the terms and conditions thereof were established by the testimony of the Besses and other witnesses, as well as the documentary evidence. The record reveals that during Mr. Senac's lifetime, Julie Besse made three payments in the amount of $487.92 and eight payments in the amount of $500.00 to Mr. Senac in repayment of the loan, purportedly in accordance with the repayment terms of the oral agreement.[3] Most, if not all, of these payments were made in cash. After Mr. Senac's death, Julie Besse attempted to deliver a payment on the loan directly to the plaintiff. The plaintiff refused to accept the payment and instructed Julie Besse to make the payments directly to the bank.
Apparently, the payments never were made directly to the bank, and the bank eventually foreclosed on the certificate of deposit and seized $48,709.42 from the certificate of deposit to pay off the balance of the loan. In early 2003, the plaintiff made demand on Julie Besse and Lloyd to repay the entire amount owed on the loan. Notwithstanding correspondence to the plaintiff from an attorney on behalf of the Besses, acknowledging the debt and indicating their wishes to "abide by the oral agreement concerning the loan from Charles E. Senac," no further payments on the debt were made either to the bank or to the plaintiff. This litigation followed.

Procedural History
The plaintiff filed suit on March 27, 2003, naming both Julie and Lloyd Besse as defendants, seeking to recoup from them the $50,000.00 she lost from her certificate of deposit, together with all interest of which she was deprived subsequent to the bank's seizure of those funds. Plaintiff alleged she suffered the loss of those funds as a direct result of the defendants' failure to honor their obligation to repay the loan to Mr. Senac.
The Besses filed peremptory exceptions of no cause of action and no right of action. The trial court denied these exceptions. The Besses then filed an answer contending that the transfer of funds was a gift or donation, and in the alternative, that the transaction was between Mr. Senac and Lloyd, and that Julie Besse was not a party thereto.
Subsequently, Julie Besse filed a motion for summary judgment, supported by affidavits from her and her son, on the grounds that she was not a party to the transaction at issue, that she received none of the funds directly, that she received no title or interest in the property purchased by her son with the funds, and that the transfer of funds was made solely for the use of her son Lloyd. The motion was denied, and the matter was set for status conference in anticipation of trial.
Prior to the trial, the parties entered into a consent judgment, which was rendered in open court on November 8, 2004, and signed March 9, 2005. Pursuant to the specific terms of the settlement, Lloyd agreed to make payments to the plaintiff in repayment of her father's loan, as follows: $12,000.00 on or before December 8, 2004 (representing payments due on the loan from January 1, 2003 through December 1, 2004); the balance of the loan, $41,847.51, bearing an interest rate of 5%, to be paid in monthly installments of $500.00 starting January 1, 2005, and ending with a final payment of $570.90 due on July 1, 2013. The consent judgment also provided that the plaintiff would be entitled to a judicial and special mortgage on the property purchased by Lloyd with the proceeds from the loan from Mr. Senac, and that Lloyd would apply for financing to repay the loan. The consent judgment finally provided that all claims against Julie Besse would be dismissed with prejudice if and when the initial $12,000.00 scheduled repayment was made.
Lloyd failed to make the $12,000.00 payment to the plaintiff on or before December 8, 2004. Based on this breach, Julie Besse's conditional dismissal failed. Plaintiff promptly filed a "Petition to Reinstate Claim and/or Annul Judgment," naming only Julie Besse as defendant, noting in the petition that Lloyd and his wife had filed for bankruptcy in March 2005. In this petition, plaintiff reasserted her original claims against Julie Besse, and alleged the facts establishing a breach of the consent judgment by Lloyd's failure to pay the $12,000.00 before the agreed upon date, and his failure at the time of the consent judgment to advise that the property was already encumbered by a mortgage.
A trial on the merits was had, following which the trial court rendered judgment, finding the transfer of funds from Mr. Senac was intended as a debt, not a gift, and finding that Julie Besse was indeed a party to the transaction and as such, was obligated to repay the loan, even though the proceeds thereof had been used solely by her son. Judgment was rendered in accordance with these findings, ordering Julie Besse to pay Judith Senac Sherar the total amount of $48,709.42 plus judicial interest from January 23, 2003, until paid. It is from this judgment that Julie Besse appeals.

No Cause of Action/No Right of Action
In her first assignment of error, Julie Besse contends the trial court erred in denying her exceptions raising the objections of no cause of action and no right of action. In support of this assignment, Julie Besse relies on La. C.C.P. art. 685 and contends that as a matter of law, the right of action to sue to enforce a right of the deceased or his succession is conferred to the succession representative. Louisiana Code of Civil Procedure article 685 provides "the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration." We add emphasis to the provision in the statute ignored by the appellant. It is undisputed that the succession was not under administration and there is no succession representative. The testimony further revealed that the named testamentary executor of the estate, Ronnie Senac, had no plans or intention to open the succession, all the property therein having already been distributed according to Mr. Senac's wishes as reflected in his will. Accordingly, La. C.C.P. art. 685 and the jurisprudence applying it and cited in support of Julie Besse's claims, are inapplicable.
Instead, La. C.C. art. 935 applies, providing:
Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them.
Prior to the qualification of a succession representative only a universal successor may represent the decedent with respect to the heritable rights and obligations of the decedent.
(Emphasis added.) This article clearly authorizes the heirs of the deceased to bring all actions that the deceased had a right to institute when the succession is not under administration. Thus, it is now well settled that an heir can sue directly without having been recognized as such by a court; all that is required is that he furnish satisfactory evidence of his right to inherit. Jones v. McDonald's Corp., 618 So.2d 992, 996 (La. App. 1st Cir. 1993). Thus, subject to the requirement of submitting proof of his status, a universal successor has the right to institute suit prior to the opening of the succession. Taboni v. Estate of Longo, 00-1043, p. 5 (La. App. 4th Cir. 5/16/01), 803 So.2d 55, 58, reversed on other grounds, 01-2107 (La. 2/22/02), 810 So.2d 1142.
In the instant case, the record contains sufficient proof of the plaintiff's status as universal heir with the right to represent the decedent and claim the debt owed him. The last will and testament of Charles E. Senac was entered into evidence and clearly establishes that plaintiff is not only an heir, but a universal and/or general legatee. Moreover, the testimony at trial established that Mr. Senac distributed all of his property to his children before his death (by creating the aforementioned certificates of deposit). At the time that Mr. Senac used the remaining certificate in his and plaintiffs names as collateral for the loan with Resource Bank, it was the only certificate still in existence. At the time of trial, there was no other property belonging to the estate with the exception of the potential recovery in this suit. Thus, the plaintiffs right to inherit is sufficiently established by the evidence in the record, and the trial court did not err in denying the exceptions.

Substantive Merits of Appeal
Having found the trial court did not err in denying the defendants' exceptions, we now must determine if the trial court manifestly erred in finding, based on the evidence presented, that the plaintiff sufficiently proved that Julie Besse was the individual to whom Mr. Senac loaned the $50,000.00; therefore, she was obligated to repay the loan to the plaintiff, now heir to that debt. We have thoroughly reviewed the entire record and the evidence before the trial court. We conclude the plaintiff failed to establish that the loan was made to Julie Besse. Rather, the only reasonable interpretation of the evidence is that the loan was made to Lloyd, based on Mr. Senac's friendship and close relation with Julie Besse. Accordingly, the trial court erred and its judgment is hereby reversed.
The plaintiff, as well as the trial court in oral reasons, relied on the following testimony to establish her claim that the loan was made to Julie Besse, a party to the transaction, who is now obligated to repay. By all accounts, Mr. Senac and Julie Besse were longtime friends and had a very close relationship.[4] It is also undisputed that Mr. Senac had no personal relationship with Lloyd. Further not in dispute, Julie Besse accompanied Mr. Senac to the bank and was present when he obtained his loan. Also, Julie Besse was the party who made payments on the loan until Mr. Senac's death and even attempted to make payments to the plaintiff thereafter. The record also reveals that Lloyd never made any payments on the loan, nor did he have any discussions with Mr. Senac's relatives about paying the loan either before or after Mr. Senac's death. Finally, it is undisputed that the funds loaned by Mr. Senac were used by Lloyd to purchase a trailer and immovable property in his name alone.
The plaintiff testified that Julie Besse was present with Mr. Senac when he told her he was using the certificate of deposit in their joint names as collateral on his loan from the bank, from which he was going to lend $50,000.00 "to Julie Besse for Lloyd." The plaintiff testified that she voiced some concern to her father about his decision to lend the money, but also made clear that she would not interfere with his intentions or desires at the time. She testified that her father told her the property being purchased with the monies would be worth more than the CD; therefore, she would be protected. The plaintiff also testified that during that conversation, Julie Besse acknowledged that she would be responsible for the repayment of the loan. This fact is disputed by Julie Besse, who maintained that the loan was from Mr. Senac to her son for him to buy property in Bush, Louisiana. She denied ever acknowledging a personal obligation on the loan. Although she admitted voluntarily delivering payments to Mr. Senac on behalf of her son, she maintained that her son gave her the money and she merely took it to Mr. Senac.
The trial court apparently credited the plaintiff's testimony over that of Julie Besse on this disputed fact, and also noted plaintiff's testimony that she had other conversations with Julie Besse concerning the loan shortly before Mr. Senac's death, and that Julie Besse had never contended that she was not obligated to repay the loan or that her son was the responsible party. According to the plaintiff, Julie Besse indicated she would continue to make payments to the plaintiff after Mr. Senac's death.
The record also contains the testimony of Lloyd, together with physical documentation that is in contrast with the factual conclusions drawn by the trial court based on the testimony of the witnesses. Lloyd testified that on the day that he originally was supposed to purchase immovable property and a trailer in Bush, Louisiana, the financing he had arranged fell through. He stated that Mr. Senac gave him a cashier's check in the amount of $50,000.00 with which to buy the property. A cashier's check from Resource Bank, dated February 19, 2002, made out to Lloyd Besse, and imprinted with the notation "Re: Charles E. Senac" was entered into evidence and is part of the record before us. Lloyd testified that he promptly used those funds to buy the property in Bush. He also testified that he began making repayments on the loan, usually giving his mother the cash and having her deliver it to Mr. Senac. According to Lloyd, he was the one obligated to Mr. Senac on the loan, but he ceased making payments after Mr. Senac's death due to his own financial difficulties and impending bankruptcy.
Ordinarily, the factual findings made by the trial court, often based on credibility determinations, are to be given great deference on review, and in the absence of manifest error, we are constrained to affirm the findings of the trial court. See Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989). However, where documentary or objective evidence so contradicts the witnesses' testimonies that a reasonable fact finder would not credit the witness's testimony, a reviewing court may well find manifest error or clear wrongness even in a finding purportedly based on credibility determinations. Landiak v. Richmond, 05-0758, p. 19-20 (La. 3/24/05), 899 So.2d 535, 549.
In this case, against the backdrop of the inconsistent testimony as to whom the loan was made, we find that the documentary evidence of the cashier's check, which was made out on the same date, by the same bank, in the same amount of money as the loan to Mr. Senac, and made payable to Lloyd Besse, so contradicts the plaintiff's witnesses' testimonies that the loan was made to Julie Besse, that the trial court's decision to credit that testimony over the contrary proof revealed by the cashier's check itself amounts to manifest error. This is particularly so under the circumstances of this case, where the agreement of loan was an oral agreement and one of the parties to that agreement is deceased and unable to provide testimony.[5] Given that all of the other relevant facts are essentially not in dispute, with the exception of the ultimate fact being to whom the loan was made, we find the only reasonable conclusion that can be drawn from the conflicting testimony on this issue would be that reflected by the documentary evidence, which speaks for itself.
Therefore, finding the trial court erred in concluding that the loan was made to Julie Besse and that she is obligated to repay it, we reverse the judgment in favor of the plaintiff and render judgment herein in favor of Julie Besse, dismissing plaintiff's claims with prejudice.[6] Costs of this appeal are assessed to the plaintiff/appellee.
REVERSED AND RENDERED.
HIPPLE, J., dissenting.
I respectfully dissent. In my view, given the earlier consent judgment entered into and rendered in open court, plaintiff clearly retained the right to establish the terms of the agreement and pursue her claims under the loan arrangement/agreement against Ms. Besse. On the record before us, I find that the trial court correctly concluded that plaintiff established her claim against Ms. Besse by a preponderance of the evidence. As noted by the trial court:
She [Julie Besse] was present with Mr. Senac when he obtained the loan from Resource Bank. Further, the evidence showed that Julie Besse acknowledged on occasions to Mrs. Sherar that she was obligated to repay the loan. Ms. Besse never contended that her son was solely responsible for repayment of the loan. Ms. Besse was the party who attempted to make payments on the loan not her son. Ms. Besse continued to make payments on the loan until Mr. Senac's death.
I find that the evidence amply supports the trial court's findings and its ruling, which involved purely factual findings based on credibility determinations. A reviewing court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Moreover, when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Hanks v. Entergy Corporation, 2006-477 (La. 12/18/06), 944 So. 2d 564, 580. Given the great deference owed to the trial court's findings, I find no error by the trial court. Under the facts as found by the trial court, the court correctly concluded the loan was made to and owed by mother and son. Thus, I respectfully dissent and would affirm the trial court's judgment.
PARRO, J., dissenting in part and concurring in part.
I disagree with the majority opinion's conclusion as to manifest error, and would affirm the trial court judgment as to the merits of the claim on the grounds suggested by Judge Whipple in her dissenting opinion. The trial court had reasonable evidentiary support for its factual finding that Julie Besse owes the debt, and the record as a whole does not indicate that this finding was manifestly erroneous.
However, as stated in the majority opinion, Sherar's status as universal heir gives her "the right to represent the decedent and claim the debt owed him." This legal position was explained to and apparently accepted by the trial court when the defendants' exceptions of no cause and no right of action were denied. Yet, the trial court's judgment in this case was against Julie Besse and in favor of Sherar, rather than in favor of her as the representative of her father's unopened succession.
Moreover, the CD at issue was in her name and her father's name. Therefore, as between Sherar and the bank, she had title to the funds represented by the CD. See LSA-R.S. 6:314. However, she was not owner of the funds represented by the CD given to her by her father, unless those funds were donated to her inter vivos by a notarial act. See LSA-C.C. art. 1536. The record does not indicate that any such donation occurred. Therefore, as to the rights of inheritance, the funds represented by her CD was still part of Mr. Senac's patrimony, and the debt owed by Julie Besse is not owed to Sherar, but to the succession of her father.
For these reasons, I would reverse the judgment, insofar as it was rendered in favor of Sherar, rather than to her as the representative of her father's succession. I would remand to the trial court to allow Sherar the opportunity to amend her petition pursuant to LSA-C.C.P. art. 934. To that limited extent, I must concur with the reversal of the judgment.
NOTES
[1] The original petition names as defendants Julie Besse and her son, Lloyd Besse, Jr. Apparently, this was an erroneous designation, as everywhere else in the record he is referred to by his correct identity, Lloyd Besse III. For reasons noted later in this opinion, Lloyd Besse III is no longer a named party in this litigation; however, for purposes herein, he will be referred to simply as Lloyd.
[2] One of the primary issues on the merits of this case concerns whether the loan was made to Lloyd alone, as contended by his mother, Julie Besse, or whether the loan was made to them jointly, as contended by the plaintiff. This issue is resolved later herein; however, any reference earlier in this opinion regarding to whom the loan was made is taken from the allegations made by the parties and in no way reflects our ultimate resolution of the issue.
[3] The difference in the amount of the payments is due to the following sequence of transactions: The promissory note signed by Mr. Senac on February 19, 2002, showed a maturity date of April 14, 2002, the date that the CD was to mature. The CD was renewed on April 14, 2002, with an interest rate of only 3%. At the same time, the loan from Resource Bank to Mr. Senac was renewed with a lower interest rate, and he signed a second promissory note that obligated him to pay interest at the rate of 5%. This second note required Mr. Senac to pay the bank interest and principal in the amount of $500.00 per month.
[4] As noted by the trial court, she would visit him two to three times a week, taking him to play golf and have lunch. Julie Besse also worked for Mr. Senac and his wife for approximately ten years and took care of them.
[5] We note that the heavier evidentiary standard provided by La. R.S. 13:3722, more commonly known as the "deadman's statute," is inapplicable here. That statute provides that a debt or liability of the deceased must be proved by the testimony of "at least one creditable witness other than the claimant, and other corroborating circumstances." In this case, an heir is claiming a debt allegedly owed to the decedent. Notwithstanding, the evidence presented in this matter was sufficient to meet the heavier evidentiary burden imposed by the dead-man's statute.
[6] Finding the trial court erred in denying the motion for summary judgment, we need not address the remaining assignments of error, which are rendered moot.