968 So.2d 745 (2007)
Petrina IMBRAGUGLIO
v.
Barry C. BERNADAS, Individually and in his Capacity as Candidate for the Office of Sheriff, St. Bernard Parish, and Lena R. Torres, in her Capacity as Clerk of Court for the Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana.
No. 2007-CA-1220.
Court of Appeal of Louisiana, Fourth Circuit.
September 21, 2007.
*746 Patrick Fanning, Gretna, Louisiana, and Salvador E. Gutierrez, Jr., Mary Ann Hand, Gutierrez & Hand, Chalmette, Louisiana, for Plaintiff/Appellee.
*747 Philip C. Ciaccio, Jr., Gretna, Louisiana, for Defendant/Appellant, Barry C. Bernadas.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
JAMES F. McKAY III, Judge.
The defendant, Barry C. Bernadas, appeals the trial court's judgment disqualifying him as a candidate for the office of Sheriff of St. Bernard Parish. We affirm.
Facts and Procedural History
Prior to Hurricane Katrina, Barry Bernadas resided at 2408 Etienne Drive in St. Bernard Parish. After the hurricane, Mr. Bernadas lived in Folsom, Louisiana until August 31, 2006. Mr. Bernadas sold his home on Etienne Drive on February 23, 2006. Since August 31, 2006, Mr. Bernadas has lived with his family at a home he purchased at 7011 General Haig Street in New Orleans. Over one year later, on September 4, 2007, Mr. Bernadas filed a "Notice of Candidacy" for the office of Sheriff of St. Bernard Parish. On that sworn notarized form, Mr. Bernadas indicate that his domicile is 3000 Riverland Drive in Chalmette, Louisiana, his childhood home and the home of his parents until Hurricane Katrina and the Murphy Oil spill made it uninhabitable. Mr. Bernadas has not lived at 3000 Riverland Drive since 1985, in fact no one has lived at the home since Hurricane Katrina.
On September 13, 2007, the plaintiff, Petrina Imbraguglio, a resident and qualified voter in St. Bernard Parish, filed a petition objecting to the candidacy of Mr. Bernadas. The trial on this matter took place on September 17, 2007. The trial court found in favor of the plaintiff and against the defendant and disqualified him from the race. It is from this judgment that the defendant now appeals.
DISCUSSION
There are two issues in this appeal: (1) whether the trial court's conclusion that the defendant, Barry Bernadas, could not avail himself of the provisions of La. R.S. 18:451.3 because he had voluntarily sold his residence in St. Bernard prior to the effective date of the statute was reasonable; and (2) whether the defendant, Barry Bernadas, had established a new domicile for the purposes of La. R.S. 18:451.3 by voluntarily selling his home, the only property he owned in St. Bernard Parish, and moving to New Orleans without residing anywhere in St. Bernard Parish for two years preceding the date he filed his notice of candidacy to run for Sheriff.
Longstanding Louisiana jurisprudence demands that courts of appeal give great deference to a trier of fact's factual findings based on credibility judgments. See Rosell v. ESCO, 549 So.2d 840, 845 (La.1989). Determinations of domicile made in the district courts are subject to the manifest error rule. Thus, it is of no consequence how the appellate court might have rule had it been sitting as the trier of fact, but rather whether a reasonable trier of fact could have reached the result that he did. See Augillard v. Barney, 05-466 (La.App. 5 Cir. 5/4/05), 904 So.2d 751.
La. R.S. 18:451.2, dealing with the qualifications of candidates for Sheriff provides:
At the time he files his notice of candidacy, a candidate for sheriff, tax assessor, or clerk of court shall have resided in the state for the preceding two years and shall have been actually domiciled for the preceding year in the parish from which he seeks election. The provisions of this Section shall not affect *748 persons holding office on August 15, 1999.
In seeking to run for the office of Sheriff, Mr. Bernadas seeks to avail himself of the provisions of La.R.S. 18:451.3 which provides:
In the event the qualifications for an office include a residency or domicile requirement, any person seeking election to such office who has been involuntarily displaced from his place of residence or domicile by effects of a gubernatorially declared state of emergency shall not be considered to have vacated his domicile or residence for purposes of qualifying for or holding office, unless he has either established a new domicile or has changed his registration to an address outside the voting district in which he seeks election.
At the time he filed his notice of candidacy, Mr. Bernadas had not spent any time at all, not even a single night, at 3000 Riverland Drive for the one year period before he executed the Notice of Candidacy Qualifying Form. In fact, the defendant had not resided at 3000 Riverland Drive since he got married in 1985. He had sold his former residence in St. Bernard Parish on February 23, 2006 and in the notarial act of sale declared his domicile and residence to be St. Tammany Parish. Then on August 31, 2006 when he purchased a new home and lots in New Orleans he again claimed his residence and domicile to be in St. Tammany Parish. An Act of Mortgage on the property on General Haig Street also shows his domicile to be in St. Tammany Parish.
Mr. Bernadas has at no time made any attempt to return to St. Bernard Parish since both the sale of his former home and the purchase and mortgage of the new home in Orleans Parish. The trial court's conclusion that the defendant could not avail himself of the provisions of La.R.S. 18:451.3 because he had voluntarily sold his residence in St. Bernard Parish and verified by two notarial acts subsequent that his domicile had changed to St. Tammany Parish prior to the effective date of the statute was reasonable.[1] Once the defendant voluntarily sold 2408 Etienne Street in February 23, 2006, he was no longer involuntarily displaced from that residence. Accordingly, Mr. Bernadas definitely lost his domicile in St. Bernard Parish at the time of the first act of sale and was by his own admission a resident and domiciliary of St. Tammany Parish.
We also find no error in the trial court's finding that the defendant established a new domicile for purposes of La. R.S. 18:451.3 (which took effect on June 8, 2006) by voluntarily selling his home, the only property owned in St. Bernard Parish, and moving to New Orleans without residing anywhere in St. Bernard Parish for two years preceding the date he filed his notice of candidacy to run for sheriff. The home the defendant purchased in New Orleans is approximately 6000 square feet and was renovated by the defendant. The defendant's minor children are all attending schools in New Orleans.
The home at 3000 Riverland Drive is between 1200 to 1300 square feet. The idea of Mr. Bernadas, his wife, and their six children moving from a 6000 square foot renovated home to a 1300 square foot unrepaired home defies logic. It is also suspect that the defendant only changed his voter registration to Riverland Drive shortly before qualifying to run for Sheriff. A change in domicile requires the physical presence of the individual in the new domicile *749 coupled with a present intent to permanently reside in the new domicile. Blackwell v. Blackwell, 606 So.2d 1355 (La. App. 2 Cir.1992). Based on Mr. Bernadas's acts and current status he could not be domiciled on Riverland Drive under any circumstances and by all reasonable criteria is now be domiciled in Orleans Parish.

DECREE
For the foregoing reasons, the judgment of the trial court disqualifying Mr. Bernardas from running for Sheriff if St. Bernard Parish is affirmed.
AFFIRMED
MURRAY, J., dissents with reasons.
KIRBY, J., dissents for the reasons assigned by J. MURRAY.
GORBATY, J., concurs, with reasons.
MURRAY, J., dissents with reasons.
The narrow issue presented by this appeal is whether Mr. Bernadas, whom the trial court found was involuntarily displaced from his residence in St. Bernard Parish by effects of Hurricane Katrina, is qualified for the office of Sheriff of St. Bernard Parish, a position that has both a residency and a domicile requirement.[1].
The trial court found that because Mr. Bernardas's involuntary displacement became an intentional voluntary act, he was disqualified as a candidate for Sheriff. The majority would affirm that decision. I respectfully disagree.
There is no question that Mr. Bernadas, who lived in St. Bernard Parish from the age of two until August 29, 2005, was involuntarily displaced from his residence and domicile in that parish due to the effects of Hurricane Katrina, a gubernatorially declared state of emergency.
La. R.S. 18:451.3, which became effective June 8, 2006, provides:
In the event the qualifications for an office include a residency or domicile requirement, any person seeking election to such office who has been involuntarily displaced from his place of residence or domicile by the effects of a gubernatorially declared state of emergency shall not be considered to have vacated his domicile or residence for purposes of qualifying for or holding office, unless he has either established a new domicile or has changed his registration to an address outside the voting district in which he seeks election.
Pursuant to the statute, once it was established that Mr. Bernardas was involuntarily displaced by Katrina, it was incumbent upon the party seeking his disqualification to prove that he either had established a new domicile outside St. Bernard Parish or had changed his voter registration from St. Bernard Parish. However, the trial court failed to make a factual finding that either of those exceptions applied.
Despite the fact that La. R.S. 18:451.3 became effective prior to Mr. Bernadas's filing of his notification of candidacy, the trial court found that the statute did not apply to him. The court reasoned that Mr. Bernadas' involuntary displacement "became an intentional voluntary act" when Mr. Bernadas sold his pre-Katrina St. Bernard residence prior to the effective date of the statute. This reasoning ignores *750 the plain language of the statute, which does not include a requirement that the "involuntarily displaced" person must continue to own a residence and/or property in the parish where he resided prior to his displacement.
In my opinion the trial court committed legal error in its application of La. R.S. 18:451.3 by ignoring the plain words of the statute and by imposing a temporal limitation, not contained in the statute, on its applicability.
Mr. Bernadas's situation uncontrovertibly falls within the ambit of the statute. Before Katrina he was domiciled in St. Bernard Parish. Like thousands of others, he was forced to flee the wrath of Hurricane Katrina. He was displaced by the effects of that storm, living with his family in East Baton Rouge, St. Tammany and Orleans Parishes. Therefore, unless he has established a new domicile or has registered to vote outside the Parish he cannot be considered to have vacated his domicile or residence for purposes of qualifying for the Office of Sheriff of St. Bernard Parish.
It is undisputed that Mr. Bernadas has not registered to vote in any parish other than St. Bernard. Therefore, absent proof by the party questioning his candidacy that he has established a domicile outside St. Bernard Parish he cannot be disqualified for having vacated his domicile or residence.
The applicable principles in determining whether an individual has changed his domicile were enunciated by the Louisiana Supreme Court in Landiak v. Richmond, 05-0758, pp. 9-11 (La.3/24/05), 899 So.2d 535, 542-44:
Louisiana case law has traditionally held that domicile consists of two elements, residence and intent to remain. When a party has not declared his intention in the manner prescribed by La. Civ.Code art. 42, proof of a person's intention regarding domicile "shall depend upon circumstances." La. Civ.Code art. 43. Thus, determination of a party's intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be. "The expressed intent of the party may be at variance with the intent as evidenced by conduct." "Each case is unique and the courts attempt to arrive at the true intent, whether express or implied."
Every person has a domicile of origin that he retains until he acquires another. Because the case law recognizes a legal presumption against change of domicile, a party seeking to show that domicile has been changed must overcome that presumption by presenting "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." Of course, because domicile and residence are two different legal concepts the facts could indicate that one has "abandoned the former domicile" in favor of a new domicile even if the person continues to have a place of residence at the former domicile.
The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Since domicile is generally defined as residence plus intent to remain, a party's uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. The same might be said when a person specifically declares his intent pursuant to La. Civ.Code art. 42. However, in the absence of a formal declaration, when documentary or other objective *751 evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. Obviously, the more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence.
Id.
Applying those principles, the Supreme Court has indicated that certain common types of documentary evidence are relevant to this inquiry. In Landiak, the Court considered the following documents:
(i) voter registration
Mr. Bernadas has never registered to vote anywhere other than St. Bernard Parish[2].
(ii) homestead exemption
Mr. Bernadas has not taken a homestead exemption for the property in Orleans Parish in which he and his family presently live.
(iii) vehicle registration records
Mr. Bernadas owns five vehicles, only one of which he owned before Katrina. This vehicle is registered in St. Bernard Parish, at his Etienne Drive address. The remaining vehicles were bought to replace vehicles lost as a result of the storm. These newly purchased vehicles are registered at 19143 Playmakers Drive in Covington, a piece of property he had purchased for investment before Katrina. He testified the vehicles were registered there because there was no mail service in St. Bernard Parish when he purchased them.
(iv) driver's license address
Mr. Bernadas has never used an address outside of St. Bernard Parish as his address on his driver's license.
(iii) statements in notarial acts
Post-Katrina, Mr. Bernadas executed three acts of sale. In these acts of sale, the notary included a recital that Mr. Bernadas and his wife are "residents of and domiciled in the Parish of St. Tammany." At trial, Mr. Bernadas explained that this was an error that he did not catch until he reviewed those notarial acts in connection with this suit. He further explained that the notary incorrectly relied on his mailing address19143 Playmakers Drive in Covingtonin drafting those acts. When Mr. Bernadas realized the error, he executed Acts of Correction, which he attempted to introduce at trial. The trial court refused to allow him to introduce those documents, and they were proffered.[3]
*752 (iv) evidence that most of the person's property is housed at that location.
This factor does not apply to this situation as Mr. Bernadas acknowledged that he has not lived in St. Bernard Parish since the storm.
The applicable factors, therefore, support the conclusion that Mr. Bernadas has not established a domicile in any parish other than St. Bernard. All parties and the trial court acknowledged that doubt with regard to a candidate's domicile "must be resolved in favor of allowing the candidate to run." Landiak, 05-0758 at p. 1, 899 So.2d at 538.
As La. R.S. 18:451.3 is applicable to Mr. Bernadas, and the party opposing his qualification for Sheriff has not shown that he changed his voter registration from that parish or established a domicile in another parish, I respectfully dissent from the majority's affirmation of the trial court's judgment disqualifying him.
KIRBY, J. dissents for the reasons assigned by J. MURRAY.
GORBATY, J., concurs, with reasons.
I agree with the majority's opinion insofar as it affirms the trial court's judgment; however, I find there are additional reasons for doing so. Therefore, I respectfully concur.
A strict interpretation of La. R.S. 18:451.3 leads to the conclusion that Mr. Bernadas was not involuntarily displaced from St. Bernard Parish once he sold his home. However, as pointed out in the dissent, "doubt must be resolved in favor of allowing the candidate to run." Landiak v. Richmond, 05-0758, p. 1 (La.3/24/05), 899 So.2d 535, 538.
There is no doubt in my mind, based on the record evidence, that Mr. Bernadas fits squarely under the exception to La. R.S. 18:451.3, that is, "unless he has either established a new domicile or has changed his registration to an address outside the voting district in which he seeks election." Mr. Bernadas and his wife executed four notarial acts, one in February 2006, and three in August 2006, wherein they swore that they were domiciled in St. Tammany Parish. Mr. Bernadas is an educated man, and he is to be held accountable for the legal documents that he signs.
Additionally, Mr. Bernadas registered several vehicles in St. Tammany Parish following the hurricane. He testified that he did so only because he could not receive mail in St. Bernard Parish. I take judicial notice that mail delivery to St. Bernard Parish residents was interrupted for only a brief time after the storm; mail pick-up for St. Bernard residents resumed before the end of 2005 with mail pick up in St. Tammany Parish. Therefore, defendant had no need to register his vehicles in St. Tammany. I find his self-serving testimony to be disingenuous.
The above factsfour notarial acts evidencing domicile in St. Tammany Parish, and the registration of several vehicles in St. Tammany Parish, combined with Mr. Bernadas' eventual move to a home in Orleans Parish evidences that Barry Bernadas established a new domicile either in St. Tammany Parish or Orleans Parish. In any event, is it clear that he no longer maintains a domicile in St. Bernard Parish, and is, therefore, not qualified to run for Sheriff.
NOTES
[1] These four Acts of Correction were not done until September 17, 2007 during the trial on Mr. Bernadas's qualification to run for Sheriff.
[1] La. R.S. 18:451.2 provides:

At the time he files his notice of candidacy, a candidate for sheriff, tax assessor, or clerk of court shall have resided in the state for the preceding two years and shall have been actually domiciled for the preceding year in the parish from which he seeks election. The provisions of this Section shall not affect persons holding office on August 15, 1999.
[2] In August 2007, however, he changed the address on his voter's registration from 2408 Etienne Drive to 3000 Riverland Drive as part of his renewal of his driver's license, which had expired.
[3] Clearly, the error in the notarial acts was inadvertent. The evidence is undisputed that Mr. Bernadas never lived at the Covington address. As explained above, he used that address only to facilitate receiving his mail during the post-Katrina period.