LISA SUAREZ AND ROBERT MITCHELL

VERSUS

FREDDIE KING, III AND ARTHUR MORRELL, IN HIS OFFICIAL CAPACITY AS ORLEANS PARISH CRIMINAL CLERK OF COURT AND CHIEF ELECTIONS OFFICER

NO. 2021-CA-0458

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-06295, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)

**LOBRANO, J., CONCURS IN THE RESULT**

M. Suzanne Montero
Graham H. Williams
Johnston J. Burkhardt
STERNBERG, NACCARI & WHITE, LLC
935 Gravier Street, Suite 2020
New Orleans, LA 70112

  COUNSEL FOR PLAINTIFFS/APPELLANTS

Edwin Mark Shorty, Jr.
Hope L. Harper
Nathan M. Chiantella
EDWIN M SHORTY JR & ASSOCIATES
650 Poydras Street, Suite 2515
New Orleans, LA 70130

  COUNSEL FOR DEFENDANTS/APPELLANTS

**AFFIRMED**
**August 3, 2021 at 3:35 p.m.**

The narrow issue presented in this election case is whether the defendant—Freddie King, III—is qualified to run for the New Orleans City Council, District C because he has been domiciled in District C for at least two years immediately preceding the election as required by § 3-104 of the City's Home Rule Charter.[1] Answering that question in the affirmative, we affirm the trial court's July 27, 2021 judgment dismissing this election suit filed by the plaintiffs, Lisa Suarez and Robert Mitchell.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. King filed a Notice of Candidacy to qualify to run for City Council, District C in the October 9, 2021 election. In his Notice of Candidacy, he stated his domicile as 3766 Lang Street, New Orleans, Louisiana 70131 (the "Lang Address"). The Lang Address, which is located within District C, is where Mr. King's parents' live; and it is Mr. King's childhood home. Three other pertinent addresses are as follows:

---

[1] The City of New Orleans' Home Rule Charter, § 3-104 provides that "candidates for district councilmember shall have been domiciled in the districts from which elected for at least two years immediately preceding their election."

1

- 1419 Leboeuf Street, Gretna, Louisiana 70053 (the "Leboeuf Address") is where Mr. King and his family lived from 2012 until July 2019; Mr. King's parents own this property;

- 5850 Brighton Place, New Orleans, Louisiana 70131 (the "Brighton Place Address") is where Mr. King and his family lived in a residence that Mr. King leased from July 1, 2019, until they moved into their new home in English Turn about two months before the trial in this matter; and

- 53 Kingsmill Lane (also referred to as 15 Forest Oak Drive), New Orleans, Louisiana 70131 (the "English Turn Address") is where Mr. King and his family presently live; Mr. King purchased this property (a vacant lot) about six years before trial and recently moved into a newly constructed house on this property.

The Lang Address, the Brighton Place Address, and the English Turn Address are all located within District C; the Leboeuf Address is located outside District C.

Seeking to disqualify Mr. King, Plaintiffs filed this suit against Mr. King.[2] Plaintiffs alleged that Mr. King failed to satisfy the two-year domicile requirement under § 3-104 of the City's Home Rule Charter. In their petition, Plaintiffs averred that "Mr. King was domiciled in Jefferson Parish during the time frame between October 9, 2019 to date and is therefore ineligible to run for the District C seat for the New Orleans City Council. Mr. King is or was actually domiciled at 1419 Lebeouf [sic] Street, Gretna, Louisiana [the Leboeuf Address], which is in the Parish of Jefferson." In support, Plaintiffs averred that "Mr. King owns

---

[2] Plaintiffs also named Arthur Morrell, Clerk of Court for Orleans Parish Criminal District Court, as a defendant. Plaintiffs averred that Mr. Morrell "is the agent for service for all political candidates in the Parish of Orleans, State of Louisiana and is the Chief Elections Officer for the Parish of Orleans, State of Louisiana in order to effect service of process on the candidate's agent pursuant to La. Rev. Stat. 18:1407." *See also* La. R.S. 18:1402(A)(2) (providing that "[t]he clerk of court, in his official capacity, if the candidate qualified with the clerk of court" is a proper party defendant in an election disqualification suit).

2

immovable property in Orleans Parish, located at 15 Forest Oaks [as noted, this is the English Turn Address], 819 Behrman Avenue, and 1117 Teche Street. For those properties, for purposes of the New Orleans Assessor's Office, Mr. King listed his address as [the Leboeuf Address]."

Plaintiffs further averred that "Mr. King has been registered to vote at his parents' home located at [the Lang Address] between October 9, 2019 to date. His parents' home is therefore a fictitious domicile, and not a place where he is actually domiciled, as required by the City Charter." Citing *Trosclair v. Joseph*, 14-675, p. 7 (La. App. 5 Cir. 9/9/14), 150 So.3d 315, Plaintiffs contended that this material inaccuracy in Mr. King's Notice of Candidacy regarding his domicile is also a grounds for disqualification.

Following a bench trial, the trial court dismissed Plaintiffs' suit. This appeal followed.

## GOVERNING PRINCIPLES AND STANDARD OF REVIEW

A general principle applicable in all election cases is that "[a]ny doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office." *Landiak v. Richmond*, 05-0758, p. 7 (La. 3/24/05), 899 So.2d 535, 541. This general principle furthers the policy that "election laws must be interpreted to give the electorate the widest possible choice of candidates." *Id.*, 05-0758, p. 6, 899 So.2d at 541. "It follows that, when a particular domicile is required for candidacy, the burden of showing lack of domicile rests on the party objecting to the candidacy. Further, a court determining

3

whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections so as to promote rather than defeat candidacy." *Id.*, 05-0758, p. 7, 899 So.2d at 541 (internal citations and quotations omitted).

In election cases, as in other civil cases, appellate courts review trial courts' factual findings under a manifest error standard and legal findings under a *de novo* standard. *Ellison v. Romero*, 20-0376, pp. 3-4 (La. App. 4 Cir. 8/11/20), ___ So.3d ___, ___, 2020 WL 4592805, *2, *writ denied*, 20-01000 (La. 8/17/20), 300 So.3d 875. "Determinations of domicile made in the district courts are subject to the manifest error rule. Thus, it is of no consequence how the appellate court might have rule[d] had it been sitting as the trier of fact, but rather whether a reasonable trier of fact could have reached the result that he did." *Imbraguglio v. Bernadas*, 07-1220, pp. 2-3 (La. App. 4 Cir. 9/21/07), 968 So.2d 745, 747 (citing *Augillard v. Barney*, 05-466, pp. 5-6 (La. App. 5 Cir. 5/4/05), 904 So.2d 751, 753).[3]

The applicable principles for determining whether an individual has changed his domicile were set forth by the Louisiana Supreme Court in *Landiak*, 05-0758, pp. 8-11, 899 So.2d at 542-44; and we find it unnecessary to repeat them in detail here. *See Augillard v. Barney*, 05-466, p. 5 (La. App. 5 Cir. 5/4/05), 904 So.2d 751, 753. After the *Landiak* case was decided, however, the Legislature, in 2008,

---

[3] *See also Landiak*, 05-0758, p. 2, 899 So.2d at 539: *Lumar v. Lawson*, 20-251, p. 19 (La. App. 5 Cir. 8/10/20), 301 So.3d 1243, 1257, *writ denied*, 20-00994 (La. 8/13/20), 300 So.3d 868, *reconsideration denied*, 20-00994 (La. 8/28/20), 301 So.3d 31; *In re Succession of Cannata*, 14-1546, p. 5 (La. App. 1 Cir. 7/10/15), 180 So.3d 355, 361.

amended the Civil Code articles governing domicile. As amended, the relevant articles governing domicile provide:

- La. C.C. art. 38: "The domicile of a natural person is the place of his habitual residence";

- La. C.C. art. 39: "A natural person may reside in several places but may not have more than one domicile. In the absence of habitual residence, any place of residence may be considered one's domicile at the option of persons whose interests are affected";

- La. C.C. art. 44: "Domicile is maintained until acquisition of a new domicile. A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence"; and

- La. C.C. art. 45: "Proof of one's intent to establish or change domicile depends on the circumstances."[4]

Given that domicile requires not only a physical residence but also an intent to remain, a party's uncontroverted testimony regarding his intent "may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary." *Landiak*, 05-0758, p. 10, 899 So.2d at 543. "Because the case law recognizes a legal presumption against change of domicile, a party seeking to show that domicile has been changed must overcome that presumption by presenting positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." *Landiak*, 05-0758, pp. 9-10, 899 So.2d 535, 543 (internal quotations and citations omitted).

---

[4] La. C.C. art. 45 further provides that "[a] sworn declaration of intent recorded in the parishes from which and to which he intends to move may be considered as evidence of intent." No such sworn declaration of intent exists in this case.

5

Observing that courts must weigh the evidence to determine domicile in fact, the Supreme Court in *Landiak* observed:

> When documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence presented in order to determine domicile in fact. Otherwise, the legal concept of domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled. Some of the types of documentary evidence commonly considered by courts to determine domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. Obviously, the more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence.

*Id.*, 05-0758, pp. 10-11, 899 So.2d at 543-44 (internal footnotes omitted); *see also*

*Pattan v. Fields*, 95-1936, pp. 7-8 (La. App. 1 Cir. 9/26/95), 669 So.2d 1233, 1238

(citing *Sheets v. Sheets*, 612 So.2d 842, 844 (La. App. 1st Cir. 1992) (observing

that "intent is based on the actual state of facts and not what one declares them to

be" and that "[t]he circumstances indicating establishment of a domicile include

where a person sleeps, takes his meals, has established his household, and

surrounds himself with family and the comforts of domestic life"). With these

principles in mind, we turn to the issue presented here.

## DISCUSSION

As noted at the outset, the narrow issue presented here is whether Mr. King

is qualified to run for Council, District C because he has been domiciled in District

C for at least two years immediately preceding the October 9, 2021 election—since

October 9, 2019—satisfying the requirement of § 3-104 of the City's Home Rule Charter.[5]

Plaintiffs' position is that Mr. King's statement on his sworn Notice of Candidacy that he was domiciled at the Lang Address is inaccurate. According to Plaintiffs, in reality, Mr. King's parents are domiciled at the Lang Address and Mr. King himself is domiciled somewhere else—the Leboeuf Address, the Brighton Place Address, or the English Turn Address. At trial, Plaintiffs introduced several documents that allegedly support their contention that Mr. King's domicile is not at the Lang Address, but rather at one of the other three addresses. Those documents include the following:

- Records from the Orleans Parish Assessor's Office reflecting that Mr. King listed his address for several properties he owned as the Leboeuf Address;

- Mr. King's car insurance card, effective from September 2019 to March 2020, reflecting that his car was garaged at the Brighton Place Address;

- Mr. King's two leases of a residence at the Brighton Place Address from 2019 to 2020, and 2020 to 2021, respectively; and

- Mr. King's electric bill for the Brighton Place Address.

Although the English Turn Address and the Brighton Place Address are both within District C, Plaintiffs contend that Mr. King's materially inaccurate

---

[5] Plaintiffs assign as error the following:

- The Court Below erred in finding that Freddie King, III accurately represented his domicile address on his Notice of Candidacy; and

- The Court Below erred in failing to disqualify Freddie King, III for the office of New Orleans City Council, District "C," as he failed to qualify in the manner prescribed by law when he made a false statement on his Notice of Candidacy.

Because we find the first issue dispositive, we do not reach the second one.

statement on his Notice of Candidacy that his domicile was at the Lang Address disqualifies him.

Mr. King counters that he accurately stated his domicile on his Notice of Candidacy as the Lang Address. According to Mr. King, he has never changed his domicile from the Lang Address. At trial, Mr. King introduced three documents in support his contention that he has never changed his domicile:

- Mr. King's Louisiana driver's license, which was issued on November 2015 and reflects his address as the Lang Address;

- His Notice of Candidacy dated January 2020 for the Orleans Parish Democratic Election Committee listing the Lang Address as his domicile; and

- His voter's registration.

The only evidence Plaintiffs introduced of Mr. King having resided outside District C during the pertinent period was the Orleans Parish Assessor's records reflecting that Mr. King listed his address for several properties that he owned as the Leboeuf Address. One of those properties was the English Turn Address property. The other properties, Mr. King explained, were investment rental properties. Mr. King testified that he never slept at any of those properties.

As to his voter's registration, Mr. King testified that he has voted at the same place since he first started voting. He further testified that he has never changed his voter's registration from the Lang Address.

As to his car registration, Mr. King explained that he registered his car at the Brighton Place Address for insurance reasons. He testified that "[a]s a practicing attorney who mainly does personal injury [work, he] underst[ood] the importance of registering your car where you intend to keep it overnight." Mr. King,

nonetheless, testified that he leased the residence at the Brighton Place Address and that he had no intent of purchasing that property.

As to his personal family background, Mr. King testified that he and his five adult siblings grew up in the house at the Lang Address. Mr. King went to undergraduate school in Hammond at Southeastern Louisiana University and law school in Baton Rouge at Southern University Law Center. While in school, he came home to the Lang Address regularly and lived there during summer breaks. None of his adult siblings still lives at the Lang Address, and none of his siblings has children. Mr. King's children, thus, are his parents' sole grandchildren.

Mr. King testified that he has four children, all under the age of six; his youngest child was born in July 2021. His children spend time at his parents' house—the Lang Address—multiple days a week. The longest he and his entire family have stayed at the Lang Address in the last five years is less than a week.

As noted elsewhere in this opinion, Mr. King moved his family from the Leboeuf Address to a leased residence at the Brighton Place Address in July 2019. He explained that he moved to the Brighton Place Address because his family was growing, and they needed more space. He further explained that the reason he made sure the residence he rented was in Algiers, Louisiana, was "because I wanted to make sure that I moved in - I was a resident of the district before I qualified to run for City Council District C." Mr. King still further testified that he continued to reside at the Brighton Place Address until he moved into his new home at the English Turn Address about two months before the trial in this matter.

As a Louisiana attorney who has been practicing since 2011, Mr. King testified that he knew the difference between domicile and residence. Over Plaintiffs' counsel's objection, the trial court allowed Mr. King to testify as to

where he believed he was domiciled; his answer was at the Lang Address. In response to the question of whether he ever formerly intended to change his domicile from the Lang Address, Mr. King answered no. He testified that he has a key to his parents' house at the Lang Address and that he has belongings stored there. He clarified that at the time of trial, the majority of his belongings were at the English Turn Address. Before moving to the English Turn Address, he testified that his belongings were split between the Lang Address and the Brighton Place Address, with the majority of his belongings at the Lang Address. He emphasized that the Brighton Place Address was never intended to be his longtime residence. He testified that he took no action to make the Brighton Place Address his permanent residence.

At the close of Mr. King's testimony, a colloquy occurred between the witness and the trial court judge. The judge asked Mr. King again if the Lang Address was his domicile; he replied in the affirmative. The judge also asked Mr. King about his homestead exemption; he replied that he did not have one and that he never applied for one before.

The jurisprudence has held that a candidate can retain his childhood address as his domicile even if the candidate resides elsewhere. *Augillard v. Barney*, 05-466 (La. App. 5 Cir. 5/4/05), 904 So.2d 751, 753. In *Augillard*, the candidate testified that when he returned to New Orleans, after attending college and working out-of-state, he initially moved in with his parents. For that reason, the candidate used his parents' address on his driver's license and vehicle registration. Thereafter, the candidate rented his own apartment. The candidate, nonetheless, did not change his voter's registration and continued to vote at his parents' address where he had always voted. The candidate testified that because all his belonging

10

were at his apartment where he was residing, he considered his apartment to be his domicile. Rejecting this argument, the trial court found the candidate's domicile was his parents' home, citing the following items: "voter registration, vehicle registration, driver's license, U.S. mail including bank statements, credit card statements, alumni materials and church mail, and finally his U.S. passport." *Augillard*, 05-466, p. 4, 904 So.2d at 752. Affirming, the appellate court, citing the *Landiak* case, observed that there is a presumption that a person's domicile remains the same unless there is sufficient evidence to show his intent to change it. Continuing, the appellate court observed that the trial court had "made a factual determination that in leaving his car and license at the old address, and particularly in not changing his voter registration, [the candidate] had not established by a preponderance of the evidence that he intended to abandon his prior domicile and establish a new one." *Augillard*, 05-466, p. 6, 904 So.2d at 753-54. The appellate court concluded that the trial court's factual determination was a reasonable one based on the record and that it could not be set aside under the manifest error standard.

Likewise, in a non-election case, the trial court's decision that the evidence supported a finding that the defendant maintained an intent not to change his domicile was affirmed as not manifestly erroneous in *In re Succession of Cannata*, 14-1546 (La. App. 1 Cir. 7/10/15), 180 So.3d 355. There, the deceased, Mr. Cannata, was found to have not changed his domicile before he died. In affirming that factual finding, the appellate court observed:

> Mr. Cannata's domicile is presumed to be St. Mary Parish. The record reflects that Mr. Cannata established a residence in Orleans Parish at Lambeth House. However, the record also reflects that Mr. Cannata maintained significant connections to St. Mary Parish. He maintained a home there, claimed a homestead exemption, paid taxes

11

> on the property, and was registered to vote in St. Mary Parish. Also, while he resided in Orleans Parish, Mr. Cannata represented in legal documents that his domicile was St. Mary Parish and never formally declared his domicile to be anywhere other than St. Mary Parish. Considering the record in its entirety, we cannot conclude that the trial court was manifestly erroneous in its determination that Mr. Cannata was, at the time of his death, domiciled in St. Mary Parish. The trial court's factual finding is reasonably supported by the record and therefore cannot be disturbed on appeal.

*Id.*, 14-1546, pp. 7-8, 180 So.3d at 363. By analogy, Mr. King maintained significant connections to the Lang Address sufficient to support the factual finding that he never changed his domicile.

Lastly, we note that this is not a case in which a candidate took actions as a subterfuge in an attempt to defeat the domicile requirement. *See Lumar*, 20-251, pp. 19-23, 301 So.3d at 1257-60 (observing that "[t]he few documents indicating that Lawson is domiciled in Louisiana were acquired in October of 2019, only 9 months before the election in this case. . . . [T]he October 2019 actions were merely a subterfuge to overcome the domicile requirement with actual intent to change domicile only upon victory"); *Imbraguglio*, 07-1220, p. 5, 968 So.2d at 748 (observing that it was "suspect that the defendant only changed his voter registration to Riverland Drive shortly before qualifying to run for Sheriff"). Here, Mr. King's connections to the Lang Address are long-standing, well beyond the two-year domicile requirement.

In sum, the totality of the circumstances supports the trial court's judgment dismissing this election suit. Mr. King's voter's registration was always at the Lang Address. His driver's license lists the Lang Address. The majority of his belongings—until two months before trial—were at the Lang Address. He explained that his car registration and insurance were at the Brighton Place Address only because of insurance requirements. He never applied for a homestead

exemption. Finally, although the Orleans Parish Assessor's office had the Leboeuf Address listed for several of his properties, those properties (other than the English Turn Address property) were investment rental properties. Accordingly, we cannot conclude that the trial court was manifestly erroneous in finding that Mr. King's domicile was at the Lang Address.[6]

**DECREE**

For the foregoing reasons, the trial court's judgment is affirmed.

**AFFIRMED**

---

[6] Given our finding that Mr. King's domicile was at the Lang Address, we need not reach the issue of whether his statement in the Notice of Candidacy was inaccurate. Nonetheless, we note, as stated elsewhere in this opinion, that both the English Turn Address—where Mr. King recently moved into his newly constructed residence—and the Brighton Place Address—where Mr. King and his family lived from July 2019 until moving to the English Turn Address—are within District C.